VANLUE, Plaintiff in error, v. STATE, Defendant in error.†

Court of Appeals

*No. 77–842–CR. Argued November 21, 1978.—*
*Decided December 28, 1978.*
(Also reported in 275 N.W.2d 115.)

---

† Petition to review granted February 19, 1979.

For the plaintiff in error the cause was argued by *Steven P. Weiss,* assistant state public defender, with whom on the briefs was *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

Before Moser, P.J., Brown and Bode, JJ.

BROWN, J. On March 30, 1977, a Burlington police officer responded to a complaint that there were individuals making noise in a van parked in a lot. Arriving at the lot about 1:30 a.m., the officer stopped and questioned two persons walking from the scene. One of the men was the defendant, Daniel L. Vanlue. At approximately the same time, a second officer arrived. While the first officer at the scene checked to see if there were any warrants out for the two men, the second officer decided to conduct a search of them because he was suspicious of their behavior. Upon searching Vanlue, he found a crowbar, a penknife and a pillowcase. He then arrested Vanlue for possession of burglarious tools.

At trial, the second officer testified that, in addition to carrying the articles taken, Vanlue was wearing gloves. The officer further testified that, based on his past experience, crowbars have been used for prying open windows and doors. A pillowcase could be used for protection from breaking glass and to carry items. Gloves are often worn to hide fingerprints, and a penknife could possibly be used for caseknifing a door.

Vanlue testified that he and his friend were driving a friend's van which had a broken window, a rusted floorboard, and no heater. It was a cold, drizzly evening with the temperature at 47°. Vanlue stated that was his reason for wearing gloves. In addition, he claimed that

prior to riding in the van, he and other friends had done their laundry at a laundromat. He borrowed an army jacket from one of the friends before going to ride in the van. He had no idea there was a pillowcase still in the jacket when he borrowed it. Vanlue further stated that he then went driving with a friend and that neither of them had a valid driver's license. Because they noticed a police car following them, they feared they would be cited for operating a vehicle without a valid license. So after the squad car was no longer following the van, they decided to park the van, hitchhike home and return the next day with a friend who had a valid license. The defendant claimed that even after parking the van they continued playing the van tape deck in a considerably loud manner. Meanwhile, he took a crowbar from the toolbox in the van and he and his friend eventually left the van and set out to hitchhike. He testified he took the crowbar because he felt, based on past experience, that it was necessary for his protection. He further testified that the crowbar was in open view at all times and that rather than running from the scene or ditching the crowbar he walked to the squad car when initially confronted by the first officer. This last fact is uncontroverted.

Prior to the presentation of Vanlue's case, the State moved for permission to ask Vanlue if he had ever been convicted of a crime, how many times, and the nature of the crimes for which he was convicted. Specifically, the State wanted to introduce the fact that Vanlue had two previous convictions for burglary. Defense counsel objected to admission of evidence on the nature of the crimes. The trial court, however, agreed with the State's motion on the grounds that evidence of commission of similar crimes by the accused could be received for the purpose of showing intent and ruled that the State could bring out the past burglaries as an indication of Vanlue's intent to carry burglarious tools. Vanlue's defense

counsel, faced with this ruling, then introduced the nature of the other crimes in his case-in-chief in an attempt to reduce the prejudicial effect this evidence would have if brought out by the State. Vanlue was found guilty, and he appeals from the judgment of conviction thereon.

There are two issues presented on this appeal. First, did the trial court err in ruling that the other crimes evidence was admissible? Second, if so, did Vanlue waive the error by introducing the evidence in his case-in-chief to cushion its adverse effect rather than waiting for the State to do so on cross-examination?

## ADMISSIBILITY OF CRIMES EVIDENCE

Section 906.09 (1), Stats., provides that a witness' credibility can be attacked on cross-examination by evidence that he has previously been convicted of a crime. In some instances the number of previous convictions is also admissible. *Underwood v. Strasser*, 48 Wis.2d 568, 180 N.W.2d 631 (1970). However, evidence of prior convictions may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Sec. 906.09 (2), Stats. In this case Vanlue is not arguing that the trial court erred in ruling that the State could cross-examine him on the fact that he had previously been convicted of a crime, nor is he claiming that the trial court erred in ruling that the State could bring out the fact that he had two previous convictions. Rather, his objection is that the trial court erred in ruling that the State could cross-examine him on the nature of the two previous convictions.

He claims that the nature of the two previous convictions is inadmissible on two grounds. First, Vanlue argues the nature of the previous convictions is not admissible under sec. 904.04 (2), Stats., because it is not

relevant to show intent to commit this crime. He asserts the only relevance it had was to prove that since he had committed a burglary before, he was going to commit a burglary again with the tools he was carrying. As such, it was specifically inadmissible under sec. 904.04(2). Second, he argues that even if the evidence was admissible to show intent under sec. 904.04(2), its probative value was outweighed by its prejudicial effect and therefore was inadmissible under sec. 904.03.

The State contends that the evidence of two prior burglary convictions was relevant to show intent and therefore admissible under sec. 904.04(2), Stats. The State's theory is that since the defendant has previously been convicted of burglary, he had knowledge of what tools were necessary or could be used in a burglary. This knowledge, the State claims, tends to show that the defendant had the intent to possess tools to be used in a burglary. The State further contends that the probative value of this evidence was not outweighed by its prejudicial effect. Therefore, it was not excludable under sec. 904.03, Stats. We disagree with the State's position.

Section 904.04(2), Stats., provides:

(2) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Essentially, the State is arguing that the burglary convictions were relevant because they tended to prove that the defendant was acting in conformity with past behavior. This is precisely the type of evidence which is inadmissible under sec. 904.04(2). The State's claim that the evidence was admitted for the purpose of showing

intent, not character, is fiction. The only relevance this evidence had was to show that he was guilty of possession of burglarious tools because he had committed burglary before and was about to do it again. This evidence in no way shows intent but only character as defined in sec. 904.04(2). To rule that this evidence is admissible under sec. 904.04(2) would essentially nullify the language in that section which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." When the supreme court adopted sec. 904.04(2), they intended it to have some meaning. If evidence of the nature of the crimes in this case is admissible, sec. 904.04(2) has no meaning.

Since we hold that the evidence of the nature of prior convictions in this case was inadmissible, we need not determine whether its probative value was outweighed by its prejudicial effect.

### STRATEGIC WAIVER

The State argues that even if the specific nature of prior convictions was inadmissible, the defendant is precluded from raising this issue on appeal because he brought out the evidence in his own case-in-chief. The State concludes that this was a strategic waiver.

 It is true that the Wisconsin Supreme Court has set very stringent standards regarding strategic waiver. *See State ex rel. Goodchild v. Burke,* 27 Wis.2d 244, 133 N.W.2d 753 (1965), *cert. den.,* 384 U.S. 1017 (1966); *Eskra v. State,* 29 Wis.2d 212, 138 N.W.2d 173 (1965), *cert. den.* 384 U.S. 922 (1966); *State v. Strickland,* 27 Wis.2d 623, 135 N.W.2d 295 (1965) and *State v. McDonald,* 50 Wis.2d 534, 184 N.W.2d 886 (1971). A defendant cannot create his own error by deliberate choice of strat-

egy and then ask to receive benefit from that error on appeal. *Henry v. Mississippi*, 379 U.S. 443, 451 (1965). We do not, however, feel that there was strategic waiver in this case. The State admits that in most situations strategic waiver involves cases where defense counsel fails to object to the admission of some part of the State's evidence and then poses an objection to that admission on appeal after the jury verdict. The State claims, however, that waiver means more than just procedural default. The State asserts that when defense counsel makes a knowing election between alternative courses of action, then strategic waiver also applies even where the defendant's choice attempts to lessen the prejudicial effect of an error.

The State cites *State v. Ruud,* 41 Wis.2d 720, 165 N.W. 2d 153 (1969), in support of its position. In particular, the State directs us to the following quotation:

> . This case does not deal with a simple waiver of rights. It deals with a knowing election between alternative courses of action. Instead of making any attempt to attack the validity of the statement the defense, as a matter of strategy, chose to use it to support his theory of the case. The deliberate choice was made not only by counsel but by the defendant as well. Such election does, in effect, estop the defendant from claiming error. *See Eskra v. State* (1965), 29 Wis.2d 212, 138 N.W.2d 173, certiorari denied, 384 U.S. 922, 86 Sup. Ct. 1375, 16 L. Ed.2d 442; *State ex rel. Goodchild v. Burke* (1965), 27 Wis.2d 244, 133 N.W.2d 753, certiorari denied, 384 U.S. 1017, 86 Sup. Ct. 1941, 16 L. Ed.2d 1039; *State v. Strickland* (1965), 27 Wis.2d 623, 135 N.W.2d 295; *Henry v. Mississippi* (1965), 379 U.S. 443, 85 Sup. Ct. 564, 13 L. Ed.2d 408. *Ruud,* 41 Wis.2d at 726, 165 N.W.2d at 156.

A close examination of *Ruud* shows that it is inapplicable to this case. In *Ruud,* the defense counsel had a choice between objecting to the admission of a confession or letting the confession be received without objection. He chose the latter course of action and did not object to

the admission of the confession. In fact, defense counsel never even considered objecting because he wanted to use the confession as part of his theory of the case. Only after the defendant was found guilty did the defense counsel object. It is obvious that in *Ruud,* defense counsel intended to use the confession for his *own benefit* as part of his case. He posed no objection. In Vanlue's case, defense counsel posed a strong objection. He did not make the nature of the crime evidence part of his case. He never intended to use it as supportive of his theory of the case. Quite simply, the prosecution asked that they be allowed to cross-examine on the nature of crimes evidence. When the defendant's objection was overruled, the evidence was going to be placed before the jury by the State. In order to lessen the prejudicial impact the evidence would have on the jury, the defense counsel had no choice but to offer the evidence himself. To decide whether to put the damaging evidence in or let the State put it in amounted to no election at all. There was no way this evidence could be used favorably by the defendant. By putting the evidence in himself, the defense counsel merely tried to lessen the prejudicial effect of the damaging evidence.

Since Vanlue's counsel objected to the admission of this evidence at the time when the State moved to have it declared admissible, it made no difference who placed the evidence before the jury. The error was made by the trial court when the motion was granted over the defendant's objection. There was no strategic waiver.

*By the Court.*—Reversed and remanded for new trial.