STATE of Wisconsin, Plaintiff-Respondent,

v.

Ronald J. FRANK, Defendant-Appellant.†

Court of Appeals

*No. 01–1252–CR. Submitted on briefs December 3, 2001.—
Decided December 11, 2001.*

## 2002 WI App 31

(Also reported in 640 N.W.2d 198.)

————————————————

† Petition to review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jane Krueger Smith* of Oconto Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *David J. Becker*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J. Ronald Frank appeals a judgment of conviction for sexual contact with a child under the age of thirteen years, contrary to WIS. STAT. § 948.02(1).[1] He argues that (1) the trial court erred when it ruled that other acts evidence would be admissible; (2) it was plain error when the trial court admitted evidence of a polygraph examination and statements made during and immediately following that examination; and (3) the trial court's evidentiary rulings prevented the real controversy from being tried. We conclude that Frank waived his right to appeal the other acts ruling by entering into a *Wallerman* [2] stipulation, any error regarding the polygraph examination was not plain and the real controversy was tried. *See State v. Wallerman*, 203 Wis. 2d 158, 552 N.W.2d 128 (Ct. App. 1996). We therefore affirm the judgment.

[1] All references to the Wisconsin Statutes are to the 1997–1998 version unless otherwise noted.

[2] In *State v. Wallerman*, 203 Wis. 2d 158, 167–68, 552 N.W.2d 128 (Ct. App. 1996), we set out a specific procedure to follow when the defendant wants to concede an element of a crime in order to avoid introduction of other acts evidence.

## I. BACKGROUND

¶ 2. On April 12–13, 1997, Frank attended a birthday party. Frank, a recovering alcoholic subject to blackouts, testified that he was drinking at the party but not to the point of blacking out. Frank even testified that he was not so intoxicated that he could not drive. Further, Frank testified that he had a history of drinking to the point of passing out and sleeping naked in the living room when he visited the home.

¶ 3. Two years later, Frank was charged with sexual contact with a child under the age of thirteen. The State filed a motion to introduce other acts evidence at trial to show intent and motive. The evidence involved testimony from another child under thirteen who claimed Frank improperly touched her. The trial court granted the motion after a hearing, but no written order was entered. Frank entered into a *Wallerman* stipulation, thereby conceding intent and motive. A jury found Frank guilty, and the trial court entered judgment and sentenced him to forty years in prison. Frank now appeals.

## II. *WALLERMAN* STIPULATION

¶ 4. Frank argues that he was, once the trial court erroneously deemed other acts evidence admissible, "required" to enter into the *Wallerman* stipulation He further argues that the *Wallerman* stipulation deprived him of the right to present evidence that his intent was negated by voluntary intoxication, which he characterizes as his only viable defense. The State maintains that Frank was not required to enter into the *Wallerman* stipulation and that, by doing so, he waived his right to appeal the other acts ruling. It also contends that Frank

had no viable defense precluded by the *Wallerman* stipulation and therefore gave up nothing.

¶ 5. We conclude that the trial court's ruling, that other acts evidence would be admissible, did not require Frank to enter into the *Wallerman* stipulation. However, by entering into the stipulation and rendering the other acts evidence inadmissible, Frank waived his right to appeal the other acts ruling. We conclude that other acts evidence must be introduced at trial before a criminal defendant can argue reversible error. In any event, we also agree with the State that Frank did not give up a defense by entering into the *Wallerman* stipulation.

■

¶ 6. In *Wallerman*, we held that a defendant can concede elements of a crime in order to avoid the introduction of other acts evidence. *Id.* at 167–68. Whether to allow such a stipulation is within the trial court's discretion. *See id.* at 168 n.4. We later concluded that an attorney's failure to know and apply *Wallerman* was deficient performance and prejudiced the outcome of the trial, thereby constituting ineffective assistance of counsel. *State v. DeKeyser*, 221 Wis. 2d 435, 443, 585 N.W.2d 668 (Ct. App. 1998).

■

¶ 7. Frank claims that *DeKeyser* "requires . . . that defense counsel enter into a <u>Wallerman</u> stipulation once the motion *in limine* to exclude such evidence has been denied. Trial counsel was therefore forced to enter into a <u>Wallerman</u> stipulation . . . ." *DeKeyser* says no such thing. Rather, DeKeyser's attorney was deficient for not knowing about *Wallerman* and, therefore, for failing to strategize whether the defendant should have conceded elements of a crime in order to avoid the introduction of other acts evidence. *DeKeyser*, 221 Wis.

2d at 443. The key phrase is that the defendant *may* concede. There is no requirement that a defendant *must* concede an element if the trial court rules that other acts evidence is admissible. Indeed, one of the issues in *DeKeyser* was whether the defendant would have conceded an element had his attorney known and advised him about *Wallerman*. *See DeKeyser*, 221 Wis. 2d at 443.

¶ 8. Here, the trial court ruled the other acts evidence admissible but it was not, in fact, ever admitted at trial. Frank entered into the *Wallerman* stipulation on the issues whether the touching that constituted the charged sexual contact "was done intentionally" and whether it was done "with the purpose to become sexually aroused or gratified." He thereby rendered the evidence inadmissible.

■

¶ 9. Generally, when a trial court rules that certain evidence is admissible, the admission cannot be deemed prejudicial error unless the evidence actually is admitted against the party objecting to it. We agree with the Washington Court of Appeals' observation: "Error cannot be assigned to a trial court ruling denying a motion in limine to exclude evidence because the ruling is advisory and tentative. . . . The error, if any, is committed, not at the time of the ruling, but only when evidence is improperly admitted over objection at trial." *State v. Austin*, 662 P.2d 872, 874 (Wash. Ct. App. 1983) (citations omitted).

¶ 10. Similarly, the Maryland Court of Special Appeals noted:

> [T]here is substantial authority for the proposition that the denial of a motion in limine cannot in and of itself constitute reversible error. *State v. Garrett*, 183 N.W.2d 652 (Iowa 1971). The court there stated:

> "It may be error (to deny a motion in limine) but cannot be reversible error. The reason is simple. The objectionable material has not yet reached the jury's ears. It may never reach the jury. . . . It is only when the (objectionable) material is offered in the jury's presence that the harm or error, if any, has been done."

*Ory v. Libersky,* 389 A.2d 922, 930 (Md. Ct. Spec. App. 1978); *accord Harley-Davidson Motor Co. v. Daniel,* 253 S.E.2d 783, 785 (Ga. Ct. App. 1979).[3]

¶ 11. Frank argues that the general rule should not be applied here because the other acts evidence was rendered inadmissible when Frank entered into the *Wallerman* stipulation. By that stipulation, Frank gave up his right to contest intent issues and to present the defense of voluntary intoxication with respect to those issues.

¶ 12. A defendant can avoid the impact of a pre-trial ruling that evidence of his prior convictions was admissible to impeach him and preclude the State from introducing the evidence of his prior convictions by declining to take the stand in his defense. To follow that course, however, the defendant gives up his right to testify in his own defense. The Supreme Court declared in *Luce v. United States,* 469 U.S. 38, 39–43 (1984), that if a criminal defendant takes that course and declines to testify in response to a trial court's ruling denying his

---

[3] In both *State v. Austin,* 662 P.2d 872, 874 (Wash. Ct. App. 1983), and *Ory v. Libersky,* 389 A.2d 922, 930 (Md. Ct. Spec. App. 1978), the trial court's ruling admitting the evidence was made by denying a motion in limine to exclude the evidence. Here it was made by granting a motion in limine seeking admission of the evidence. We view the difference as inconsequential.

motion to forbid use of his prior conviction to impeach his credibility, he is not entitled to appellate review of that ruling.

¶ 13. The Supreme Court recently elaborated on the choice confronted by the defendant in *Luce*:

> [H]ere petitioner runs into the position taken by the Court in a similar, but not identical, situation in *Luce v. United States*, 469 U.S. 38 (1984), that "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative." *Id.*, at 41. Only when the government exercises its option to elicit the testimony is an appellate court confronted with a case where, under the normal rules of trial, the defendant can claim the denial of a substantial right if in fact the district court's *in limine* ruling proved to be erroneous. In our view, there is nothing "unfair," as petitioner puts it, about putting petitioner to her choice in accordance with the normal rules of trial.

*Ohler v. United States*, 529 U.S. 753, 759 (2000).

¶ 14. Precisely the same thing can be said here. Frank had a choice. He could have declined to enter into a *Wallerman* stipulation, thereby allowing the State to introduce the other acts evidence against him and preserving the issue of the admissibility for appellate review. Or, he could have entered into a *Wallerman* stipulation, thereby precluding the admission of the evidence and forfeiting his right to appellate review of the admissibility of the evidence. With respect to that choice, what the Supreme Court said in *Ohler* can be said here: "[T]here is nothing 'unfair' . . . about putting [Frank] to [his] choice . . . ." *Id.*

¶ 15. According to the Supreme Court, we should not speculate whether the State would actually have

introduced the other acts evidence if Frank had not entered into the *Wallerman* stipulation. In *Luce*, the Court said:

> When the defendant does not testify, the reviewing court also has no way of knowing whether the Government could have sought to impeach with the prior conviction. If, for example, the Government's case is strong, and the defendant is subject to impeachment by other means, a prosecutor might elect not to use an arguably inadmissible prior conviction.

*Id.* at 42. The State might have elected not to use the other acts evidence to avoid diverting the jury's attention from the victim at hand to the victim of the "other acts." It might also have elected not to use the other acts evidence to avoid the risk of reversal of the conviction. Frank may not obtain relief based on speculation as to whether the evidence would actually have been admitted absent the *Wallerman* stipulation. Such speculative harm is not sufficient to warrant review of the trial court's ruling.

¶ 16. Frank also argues that he was harmed by the trial court's ruling that other acts evidence was admissible because he gave up his right to present a defense on the issue of intent and purpose. However, by his own admission, Frank had no defense to present on those issues and, therefore, Frank gave up nothing when he chose between the *Wallerman* stipulation and the possible presentation of other acts evidence. Frank testified that he did not touch the victim. If Frank invoked an intoxication defense, he would be admitting the actions but claiming he lacked intent because he

was intoxicated. Frank was not prejudiced by having to choose between defenses that are diametrically opposed and patently inconsistent.

¶ 17. Frank described the nature of his defense to the charge in a written response to the State's motion to admit the other acts evidence: "The defendant does not dispute the claim that if there were touching that it was for either [sic] sexual gratification. He claims that . the touching did not happen." That statement was made before the trial court ruled the other acts evidence admissible and therefore was not the product of . the trial court's ruling.

¶ 18. Frank suggests that he would have mounted an intoxication defense on the issue of intent. However, Frank's trial testimony revealed that he had no viable intoxication defense to offer. The alleged sexual contact with the victim occurred during the night and early morning hours of April 12–13, 1997. Frank testified that, notwithstanding the fact that he had been drinking on April 12 and that he had suffered alcoholic blackouts on other occasions, he did not have an alcoholic blackout on April 12 or 13, 1997. On the contrary, he testified that he "remember[ed] that day very well" and that he was "clear what [he] did" on the evening of April 12–13. Describing the effect of his drinking on the occasion in question, Frank testified:

> I was very much aware of how much I had going on that night. I was drinking. I was not in the blackout state. I was not even intoxicated to the point where I didn't think I could drive, and I did leave the house at about 2:30, quarter after 2:00, 2:30 or so, right in that area is when I decided that I wasn't gonna stay there.

¶ 19. Frank's testimony not only fails to support, but affirmatively belies an intoxication defense. The

degree of intoxication that would be necessary to establish an intoxication defense would have to have been significantly more than drinking that did not even render Frank incapable of driving and that did not in any way impair his recollection of the evening in question. *See generally State v. Strege,* 116 Wis. 2d 477, 482–91, 343 N.W.2d 100 (1984). Based upon Frank's elected strategy, the only defense available was the one Frank pursued: that the acts described by the victim did not occur. The trial court's ruling on the admissibility of the other acts evidence did not prejudice Frank. He gave up no viable defense when he entered into the *Wallerman* stipulation.

III. REAL CONTROVERSY

¶ 20. Frank argues that the real controversy was not tried because entering into the *Wallerman* stipulation precluded him from presenting his voluntary intoxication defense. *See* WIS. STAT. § 752.35. He contends that once the trial court ruled that the other acts evidence was admissible, he had to enter the stipulation. We conclude that the real controversy was not the defense Frank could have presented. Rather, the real controversy in this case was whether Frank was present and touched the victim.[4] That was tried.

¶ 21. Under this heading in his brief, Frank complains about hearsay testimony from Arlene B., the victim's grandmother. At trial, Arlene testified about a

---

[4] Frank seems to be suggesting that had the State not attempted to introduce the other acts evidence and the trial court not ruled that evidence admissible, he would have testified differently at his trial, providing a basis for an intoxication defense. We reject this argument because it would mean one version would have been a fabrication.

conversation in which her granddaughter revealed the secret that "Frank had crawled into bed with her and taken her underwear off and was just doing other things . . . ." The foregoing quote is the full extent to which Arlene testified about Frank's actions toward her granddaughter.

¶ 22. This alleged hearsay has nothing to do with whether the real controversy was tried. Moreover, the testimony was not erroneously admitted. It was introduced to explain how the sexual assault allegations came out and how the incident was first reported, and the jury received a proper limiting instruction. Frank's contention that "the details of the alleged sexual conduct" made this testimony inadmissible hearsay fails. The record discloses that Arlene did not testify as to details concerning the assault itself.

IV. EVIDENCE OF POLYGRAPH EXAMINATION

¶ 23. Frank argues that the State impermissibly presented evidence to the jury about a polygraph examination.[5] A police officer testified that he asked Frank if he would take a polygraph. The officer said Frank agreed to take one, but he did not testify whether a polygraph was administered. Subsequently, David Thompson, an "expert forensic interviewer," testified that he interviews people for the purpose of court appearances. He testified as to the details of his interview with Frank.

¶ 24. Frank contends that it is "clear beyond any possible doubt, no reasonable juror could have failed to

---

[5] Whether the State may elicit if a defendant was asked to take or agreed to take a polygraph test is not at issue in this case.

conclude that Mr. Thompson was the polygraph examiner and that the statements to which he testified were made to him during the course of administering the polygraph examination . . . ." We reject his contentions because they are neither supported nor logically compelled by the record. Moreover, Thompson, the "expert forensic examiner" Frank contends was undoubtedly the polygraph examiner, never mentioned the word polygraph in his testimony. We conclude that the State presented no evidence to the jury regarding Frank's polygraph examination.

¶ 25. Even if we had concluded that the trial court erred by allowing Thompson to testify, the error did not rise to the level of plain error. The "plain error" doctrine set forth in WIS. STAT. § 901.03(4) requires Frank to establish that there indeed was error and that the error was plain. *See United States v. Olano*, 507 U.S. 725, 732–34 (1993).[6] In this context, plain "is synonymous with 'clear' or, equivalently, 'obvious.' " *Id.* at 734. Further, a plain error is one that is "both obvious and 'substantial' or 'grave,' and the rule is 'reserved for cases where there is the likelihood that the [error] has denied a defendant a basic constitutional right.' " *State v. Vinson*, 183 Wis. 2d 297, 303, 515 N.W.2d 314 (Ct. App. 1994) (citations omitted). Frank identified no basic constitutional right implicated, and he concedes,

_____

[6] In *United States v. Olano*, 507 U.S. 725, 732–34 (1993), the Supreme Court interpreted the federal plain error doctrine set out in FED. R. CRIM. P. 52(b). That rule was the model for FED. R. EVID. 103(d), and WIS. STAT. § 901.03(4) is substantially identical to RULE 103(d). Therefore, federal decisions like *Olano* interpreting RULE 52(b) are "highly relevant in defining the scope of [§ 901.03(4)]. *Virgil v. State*, 84 Wis. 2d 166, 190, 267 N.W.2d 852 (1978).

"[t]here is no evidence in the record as to the time separation, if any, between the polygraph examination and the post-polygraph interview . . . ." The record does not reveal the circumstances under which Frank made his statements to Thompson. It is not possible to say that admission of the statements was error, much less "plain" error. Any perceived error is merely speculative.

*By the Court.*—Judgment affirmed.