STATE of Wisconsin, Plaintiff-Respondent,

v.

GARY M. B., Defendant-Appellant.†

Court of Appeals

*No. 01–3393–CR. Submitted on briefs August 9, 2002.—Decided March 6, 2003.*

2003 WI App 72

(Also reported in 661 N.W.2d 435.)

† Petition to review granted.

811

814

On behalf of the defendant-appellant, the cause was submitted on the briefs of *T. Christopher Kelly* of *Kelly & Habermehl, S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Diane M. Welsh*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Vergeront, P.J., Dykman and Deininger, JJ.

¶ 1. DEININGER, J. A jury found Gary B. guilty of three counts of first-degree sexual assault of a child in violation of WIS. STAT. § 948.02(1) (2001–02).[1] He appeals, claiming the trial court erred by permitting three, twenty-five-year-old convictions to be used to impeach his credibility instead of limiting the number of admissible convictions to his two most recent ones. We agree that the trial court did not engage in a proper exercise of discretion when it ruled that the State could utilize all five convictions for impeachment purposes,

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

but we conclude that any error in this regard was harmless. Accordingly, we affirm the appealed judgment of conviction.

## BACKGROUND

¶ 2. Gary's stepdaughter testified at trial that when she was between the ages of nine and twelve, he sexually assaulted her two to three times per week at the family's home in the village of Potosi. According to the girl, who was fifteen at the time of trial, Gary touched her vagina on top of or underneath her clothing and she, at his request, touched his penis either on top of or underneath his clothing. The girl further testified that she described Gary's behavior to her mother after the first assault, but her mother did not believe her. The girl also testified that she occasionally locked herself in the bathroom in order to prevent the assaults, and that if she asked Gary to stop the assaults, he would tell her that they both "would get into trouble" and that she "wouldn't be able to see [her] mom again."

¶ 3. The girl's mother died of a heart attack when the girl was twelve, and she went to live with various out-of-state relatives, ultimately settling with her biological father and his girlfriend in Iowa. Several months after moving to Iowa, she described Gary's behavior to her father's girlfriend, who in turn contacted the Iowa Department of Health and Human services. The department arranged for the girl to enter counseling and subsequently contacted the Village of Potosi Police Department. A police officer interviewed the girl twice and took two written statements.

¶ 4. The State charged Gary with three counts of first-degree sexual assault of a child, to which he pled not guilty. Prior to trial, Gary filed a motion in limine

requesting "[t]hat a hearing be held as to the number of convictions . . . that would be used as impeachment . . . as to the defendant." He had a total of five previous convictions: a 1973 conviction from the State of Maine for "uttering or insufficient funds"; a 1975 conviction from the State of Maine for disorderly conduct; a 1977 conviction from the State of Maine for assault; and two 1991 convictions from the State of Iowa for domestic abuse.

¶ 5. At the hearing on his motion, Gary did not object to the use of his two 1991 convictions for impeachment purposes. He did object, however, to the use of all five convictions, arguing that the court should not allow the introduction of "the convictions in the 1970's since it has been . . . quite some time since those had occurred" and because they do not "go towards truthfulness." The State's one-sentence response was that "[t]he consistent series of [crimes in] '73, '75, and '77, twice in '91, make it significant." The court ruled as follows:

> The law generally in Wisconsin doesn't follow the federal law. There is no exclusion for convictions more than 10 years old. Some of these are 27 years, 25 years, 23 years. But to the extent that there is I guess a presumption in the statute and the statute allows for prior convictions to be brought in because it does say something about the person's credibility, I will allow it.

¶ 6. At trial, Gary's counsel elicited the following during Gary's direct examination:

Q Well, I want to go off track a little bit. Have you ever been convicted of a crime?

A Yes, I have.

Q How many times?

A Five times.

The State made no mention of Gary's prior convictions during its cross-examination of him, but it referred to them once during its closing rebuttal argument:

> First of all, you have to look in terms of everybody's credibility, including that of the defendant. You can take into consideration his interest, who has the ultimate interest to gain by a finding of not guilty. He does. He has the absolute ultimate greater interest. Because of that you can take into consideration the fact that [Gary] has had five prior convictions. Use it only in terms of whether or not he is credible, not in terms of whether something else happened. It goes toward his credibility.

Later in its argument, the State also said that, although Gary "said that it didn't happen," the jury should "look at his prior record and look at his interest in the outcome of this case . . . ."

¶ 7. Following closing arguments, the judge instructed the jury as follows:

> Evidence has been received that the defendant . . . has been convicted of crimes. This evidence was received solely because it bears upon the credibility of a defendant as a witness. It must not be used for any other purpose and particularly you should bear in mind that a criminal conviction at some previous time is not proof of guilt of the offense now charged.

*See* Wis JI—Criminal 327.

¶ 8. After approximately three hours of deliberation, the jury reported to the judge that it was unable to reach a unanimous decision. The court, over Gary's objection, read Wis JI—Criminal 520 to the jury, an instruction which encourages jurors to try to reach a

unanimous verdict if possible.[2] After twenty more minutes of deliberation, the jury returned a guilty verdict on all three counts. The court entered a judgment of conviction and sentenced Gary to twelve years imprisonment with consecutive probation. Gary appeals the judgment.

## ANALYSIS

¶ 9. Gary argues that the trial court erred by failing to weigh the danger of unfair prejudice resulting from introduction of evidence of his prior convictions against its probative value as required by WIS. STAT. § 906.09:

> **(1)** GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or adjudicated delinquent is admissible. The party cross-examining the witness is not concluded by the witness's answer.
>
> **(2)** EXCLUSION. *Evidence of a conviction of a crime or an adjudication of delinquency may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.*

*Id.* (emphasis added). He contends that his three convictions for relatively minor offenses some twenty-five years ago were only remotely probative of his credibility at trial, and that he was unfairly prejudiced by their admission because the case boiled down to a credibility contest between him and his stepdaughter.

¶ 10. Before addressing the merits of Gary's claim of error, we take up the State's contention that Gary waived any objection to the trial court's admission of his

---

[2] Gary does not challenge on appeal the giving of this instruction.

prior convictions by preemptively testifying to them on direct examination. The State bases its argument on *Ohler v. United States*, 529 U.S. 753 (2000). The United States Supreme Court held in *Ohler* that "a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error." *Id.* at 760. The Court noted that "both the Government and the defendant in a criminal trial must make choices as the trial progresses." *Id.* at 757. The Court concluded that if the defendant "choose[s] . . . to introduce the [prior] conviction on direct examination and remove the sting," "there is nothing 'unfair' . . . about putting [the defendant] to [his] choice." *Id.* at 758–59.

¶ 11. As Gary correctly notes, however, we are not bound by the *Ohler* decision because the Supreme Court's holding did not rest on an interpretation of U.S. Constitutional or other "federal law" that we must apply in this case. Rather, the Court in *Ohler* enunciated a rule of administration[3] applicable to the federal courts based on what it deemed to be a "well-established commonsense principle." *Id.* at 756. Holdings of the United States Supreme Court are binding on this court only when they address questions of federal law which govern the dispute before us. *See State v. King*, 205 Wis. 2d 81, 93, 555 N.W.2d 189 (Ct. App. 1996). The question of whether Gary waived the right to challenge in this court the trial court's ruling on the number of convictions admissible for impeachment purposes is not a

---

[3] Waiver rules applied by appellate courts are "rule[s] of administration," not of jurisdiction or of the court's power. *See, e.g., State v. Riekkoff*, 112 Wis. 2d 119, 124, 332 N.W.2d 744 (1983).

question of federal law. We are therefore free to apply our own notion of "commonsense principles" in determining whether to find waiver in a defendant's preemptive introduction of conviction evidence in response to a court's pre-trial denial of a motion to exclude it.

¶ 12. Indeed, we have already addressed the issue, reaching a conclusion contrary to that of the Supreme Court in *Ohler*. We concluded in *Vanlue v. State*, 87 Wis. 2d 455, 275 N.W.2d 115 (Ct. App. 1978), *rev'd on other grounds,* 96 Wis. 2d 81, 291 N.W.2d 467 (1980), that a defendant who unsuccessfully objects to the admission of prior conviction evidence does not waive the objection by preemptively testifying about the convictions on direct examination. *Id.* at 462. We reasoned that when a trial court decides to admit prior conviction testimony over a defendant's objection, the defendant is left with "no choice but to offer the evidence himself" so as "to lessen the prejudicial impact the evidence would have on the jury." *Id.* Under such circumstances, we concluded that the defendant's introduction of the prior conviction evidence is a forced, defensive use of the evidence, which does not constitute a waiver of the defendant's previous objection to the admissibility of the evidence for purposes of an appeal. *Id.*

¶ 13. Our conclusion on the issue at hand in *Vanlue* has not been overruled, withdrawn, or modified and we are bound to follow it.[4] *See Cook v. Cook*, 208

---

[4] The supreme court reversed our conclusion in *Vanlue* that the trial court had erroneously exercised its discretion in admitting evidence of the nature of the defendant's prior convictions for purposes of proving his intent. *See Vanlue v. State*, 96 Wis. 2d 81, 83, 291 N.W.2d 467 (1980) ("The court of appeals held that the trial court committed reversible error in admitting such evidence and reversed the judgment of convic-

Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997). Accordingly, we conclude that by introducing the number of his prior convictions on direct examination Gary did not waive his right to claim error in the admission of the three oldest convictions.

¶ 14. The State suggests, however, that the *Ohler* decision is controlling because we "cited with approval" the "general principle[s]" of *Ohler* in *State v. Frank*, 2002 WI App 31, ¶¶ 13–14, 250 Wis. 2d 95, 640 N.W.2d 198, *review denied*, 2002 WI 121, 257 Wis. 2d 117, 653 N.W.2d 890 (Wis. Sep. 3, 2002) (No. 01–1252–CR). We disagree. *Frank* involved very different circumstances than those present here and in *Vanlue*. The defendant in *Frank* entered into a *Wallerman*[5] stipulation, whereby he stipulated to the intent element of a sexual assault charge in order to avoid the introduction of "other acts" evidence to which he had unsuccessfully objected. *See Frank*, 250 Wis. 2d 95, ¶¶ 3, 6. After he was convicted, the defendant appealed the trial court's ruling admitting the other acts evidence. We concluded that the defendant had waived his right to appeal the trial court's ruling by choosing to enter into the *Wallerman* stipulation. *Id.*, ¶¶ 13–14.

¶ 15. In support of our conclusion, we quoted a passage from *Ohler* which included the Court's statement that " 'there is nothing 'unfair' . . . about putting [the defendant] to [his] choice.' " *Id.*, ¶ 13 (quoting *Ohler*, 529 U.S. at 759). We noted earlier in our opinion that, generally, a trial court's ruling to admit evidence

tion. We reach the opposite conclusion."). The court did not address our discussion of the waiver issue. *See id.* at 92–93 (Abrahamson, J., dissenting).

[5] *State v. Wallerman*, 203 Wis. 2d 158, 167–68, 552 N.W.2d 128 (Ct. App. 1996), *overruled on other grounds by State v. Veach*, 2002 WI 110, 255 Wis. 2d 390, 648 N.W.2d 447.

can constitute "prejudicial error" only if the evidence "actually is admitted against the party objecting to it." *Id.*, ¶ 9. The defendant in *Frank* precluded that from happening by opting to enter into the *Wallerman* stipulation, and we cited *Ohler* for the proposition that it was not "unfair" for a defendant to be put to such a choice. *Id.*, ¶ 14.

¶ 16. Our conclusion in *Frank* was plainly premised on the fact that the defendant had obtained the very result he desired—preventing the jury from hearing of his prior acts—and he could not claim prejudicial error from something that did not happen. *See id.*, ¶ 5 ("We conclude that other acts evidence must be introduced at trial before a criminal defendant can argue reversible error."). Here, unlike in *Frank*, Gary did *not* prevent the jury from hearing the disputed conviction evidence, and we conclude that, under *Vanlue*, his preemptive introduction of it did not constitute a waiver. It is one thing for a defendant to completely eliminate the potentially harmful impact of unsuccessfully objected to evidence by taking alternative steps to prevent its introduction, and quite another to merely soften the blow by beating the State to its punch.

¶ 17. In short, we are not persuaded that either *Ohler* or *Frank* requires us to abandon our conclusion in *Vanlue* regarding the absence of waiver when a defendant responds to an adverse ruling by preemptively introducing conviction evidence which the defendant unsuccessfully sought to exclude.

¶ 18. The State's attempts to distinguish *Vanlue* are similarly unpersuasive. The State points out that in *Vanlue*, the nature of the defendant's prior convictions was used to show that the defendant possessed the requisite intent for the charged crime, while here the fact and number of Gary's prior convictions were in-

tended solely to attack his credibility. Our holding in *Vanlue*, however, did not turn on the State's intended purpose in using the prior conviction evidence. Rather, we premised our conclusion on the principle that a pre-trial ruling permitting the introduction of prior conviction evidence effectively forces the defendant to introduce the evidence preemptively, and the defendant's introduction of the evidence should not therefore constitute a waiver of his or her prior objection to its admissibility. *See Vanlue*, 87 Wis. 2d at 461–62. That principle is as valid here as it was in *Vanlue*.

¶ 19. The State also attempts to distinguish this case from *Vanlue* by asserting that the defendant in *Vanlue* "preserved the claim for appeal by making a record in the trial court and receiving assurances from the trial court that the defendant had not waived any rights" whereas "[t]his did not occur in the present case." The flaw in this attempted distinction is that the State cites the supreme court's *Vanlue* decision, not ours, for the fact that the defendant received "assurances from the trial court that [he] had not waived any rights." *See Vanlue*, 96 Wis. 2d at 86. That fact is nowhere to be found in our decision, and hence cannot be said to have been a basis for the result we reached. (The supreme court did not address the waiver issue in its *Vanlue* decision. See footnote 4.)

■

¶ 20. Finally, the State posits that, had Gary's counsel "ask[ed] him only if he had ever been convicted of a criminal offense," the prosecutor might have chosen not to elicit the number of Gary's convictions during cross-examination. Thus, in the State's view, Gary's "preemptive admission" of the number of his convictions apprised the jury of a fact it might never have

otherwise learned, rendering the harm from the court's pre-trial ruling too speculative to be considered on appeal. *See Frank*, 250 Wis. 2d 95, ¶ 15 (noting that the State might not have introduced the disputed other acts evidence even absent the *Wallerman* stipulation, and consequently, "[s]uch speculative harm is not sufficient to warrant review of the trial court's ruling"). We disagree that the concept of "speculative harm" should be applied to the present facts.

¶ 21. At the hearing on Gary's motion, the State asked the court to admit evidence of all five convictions, arguing that "[t]he consistent series of [crimes in] '73, '75, and '77, twice in '91, make it significant." Once the court ruled that all five convictions were admissible for impeachment purposes, it was reasonable for Gary to assume that the State would elicit the number of his convictions on cross-examination. *See Vanlue*, 87 Wis. 2d at 462 ("When the defendant's objection was over-ruled, the evidence was going to be placed before the jury by the State."). Gary most certainly would not have mentioned his convictions at all had the trial court not allowed their admission. *See Ohler*, 529 U.S. at 761 (Souter, J., dissenting) ("[D]efense lawyers do not set out to impeach their own witnesses, much less their clients.").

¶ 22. We therefore conclude, as we did in *Vanlue*, that "it made no difference who placed the [prior conviction] evidence before the jury" because the error, if any, "was made by the trial court when the motion was granted over the defendant's objection." *See Vanlue*, 87 Wis. 2d at 462. The point again is that, here, unlike in *Frank*, the jury actually heard the allegedly prejudicial facts, and Gary should not be penalized for acting reasonably in response to the court's ruling. *Cf. State v. Pitsch*, 124 Wis. 2d 628, 631, 369 N.W.2d 711 (1985)

("Defense counsel apparently *followed the usual trial strategy* of raising the issue of defendant's prior convictions on the premise that this approach is less damaging than if the prosecutor raises the issue first." (emphasis added)).

¶ 23. We conclude that Gary made a sufficient record to preserve for appeal his objection to the use of his three oldest convictions for impeachment purposes. "In order to preserve the right to appeal on a question of admissibility of evidence, a defendant must apprise the trial court of the specific grounds upon which the objection is based." *State v. Tutlewski*, 231 Wis. 2d 379, 384, 605 N.W.2d 561 (Ct. App. 1999). Gary did so, objecting to the three earliest convictions as being stale and irrelevant. We therefore turn to the substance of Gary's claim: that the trial court erred in ruling Gary's three earliest convictions admissible for impeachment purposes.

¶ 24. WISCONSIN STAT. § 906.09 permits the admission of prior convictions for impeachment purposes. (See text of statute at ¶ 9.) The statute reflects the presumption that "a person who has been convicted of a crime is less likely to be a truthful witness than a person who has not been convicted." *State v. Kruzycki*, 192 Wis. 2d 509, 524, 531 N.W.2d 429 (Ct. App. 1995). The decision whether to admit prior conviction evidence for impeachment purposes under § 906.09 lies within the trial court's discretion. *Id*. at 525. We will uphold a trial court's discretionary decision if it correctly applied accepted legal standards to the facts of record and used a rational process to reach a reasonable conclusion, putting aside "whether we would have made the same ruling." *Id*.

¶ 25. The trial court allowed all five of Gary's convictions to be admitted based solely on its understanding that there is "a presumption in the statute . . . [that] . . . allows for prior convictions to be brought in because [they] do[ ] say something about the person's credibility." The court's statement that evidence of prior convictions is presumptively relevant to the issue of a witness's credibility is a correct statement of law. *See id.* at 524. The presumption, however, is an insufficient basis for admitting evidence of every one of a witness's prior convictions for impeachment purposes. If it were, Wis. STAT. § 906.09 would contain only the "general rule" that "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime or adjudicated delinquent is admissible." Section 906.09(1).

¶ 26. WISCONSIN STAT. § 906.09 does not end with the "general rule," however. Subsection (2) requires that a court also consider whether conviction evidence should be excluded because "its probative value is substantially outweighed by the danger of unfair prejudice." As the supreme court has explained:

> Whether a prior conviction involves dishonesty is, of course, a relevant consideration to admissibility. As the Judicial Council Committee's Note emphasizes:
>
> a judge should consider whether from the lapse of time since the conviction, the rehabilitation or pardon of the person convicted, the gravity of the crime, the involvement of dishonesty or false statement in the crime . . . the probative value of the evidence of the crime is substantially outweighed by the danger of undue prejudice.

*State v. Kuntz*, 160 Wis. 2d 722, 752, 467 N.W.2d 531 (1991) (quoting Judicial Council Committee's Note, 59 Wis. 2d at R181).

¶ 27. Because the trial court did not weigh the probative value of the three oldest convictions against the danger of unfair prejudice after Gary objected to their admission, we conclude that it did not engage in a proper exercise of discretion. *See, e.g., State v. Smith*, 203 Wis. 2d 288, 295–96, 553 N.W.2d 824 (Ct. App. 1996). Had it done so, the court might have concluded that Gary's three twenty-five-year-old convictions for relatively minor offenses were not sufficiently probative of his credibility to merit mention at trial. Although we may independently review the record to determine whether the proper legal standard applied to the facts of record support the trial court's ruling, we decline to do so here.[6] Because there were no evidentiary proceedings (and only very brief argument) on the issue in the trial court, the record provides no basis for us to

---

[6] *See State v. Pittman*, 174 Wis. 2d 255, 268–69, 496 N.W.2d 74 (1993) (If "the trial court's exercise of discretion demonstrates consideration of improper facts or a mistaken view of the law, the reviewing court need not reverse if it can conclude ab initio that facts of record applied to the proper legal standard support the trial court's conclusion."); *but see Barrera v. State*, 99 Wis. 2d 269, 282, 298 N.W.2d 820 (1980) (The "court of appeals made its own conclusion that the probative value of this evidence would be outweighed by its inflammatory nature. In so doing, the appellate court usurped the function of the trial court. We caution the appellate court against taking on the role of the trier of fact."); *Lueck's Home Improvement, Inc. v. Seal Tite Nat'l, Inc.*, 142 Wis. 2d 843, 850, 419 N.W.2d 340 (Ct. App. 1987) ("We may not exercise the discretion vested in the trial court.").

conclude that, had the court applied the correct legal standard, it would have reached the same result.

¶ 28. We therefore proceed to consider whether any error in admitting evidence of the oldest convictions was nonetheless harmless. *See id.* at 300 ("Not all errors require reversal."). The State asserts that if the trial court erred in admitting all five of Gary's convictions instead of only his two most recent ones, the error was harmless. We agree. An error is harmless if it is " 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.' " *State v. Harvey*, 2002 WI 93, ¶ 46, 254 Wis. 2d 442, 647 N.W.2d 189 (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). We concluded in *State v. Moore*, 2002 WI App 245, 257 Wis. 2d 670, 653 N.W.2d 276, that despite the supreme court's use of different language to express the test,

> [t]here is nothing in *Harvey* to suggest that this language constitutes a substantive change in Wisconsin's harmless error test. The court's prior articulation of the test was frequently summarized as follows: "whether there is a reasonable possibility that the error contributed to the conviction. A reasonable possibility is a possibility sufficient to undermine our confidence in the conviction." *State v. Williams*, 2002 WI 58, ¶ 50, 253 Wis. 2d 99, 644 N.W.2d 919 (citations omitted).

*Id.*, ¶ 16.

¶ 29. The question before us, therefore, is whether there is a reasonable possibility that Gary's testifying to five prior convictions instead of only two contributed to his conviction.[7] We are satisfied that it

---

[7] We have previously observed that Wisconsin's rule on the use of prior conviction evidence for impeachment purposes can

did not—our confidence in the outcome of the trial is not undermined by any error relating to the admission of Gary's three oldest convictions for impeachment purposes.

¶ 30. Gary did not challenge the admissibility of his two 1991 convictions for impeachment purposes. The jury would therefore have been informed that he had two criminal convictions, and accordingly, jurors would have had reason to question his credibility on the basis of his past criminal conduct. Although each additional conviction of which the jury learned may have added incrementally to its suspicion of Gary's credibility, "the question is one of degree[:] . . . . 'this [was] not a case of one conviction versus eleven . . . or none versus some.' " *State v. Carnemolla*, 229 Wis. 2d 648, 655, 600 N.W.2d 236 (Ct. App. 1999) (citation omitted). Rather, this appeal involves the difference between two convictions and five convictions, a difference that we conclude was too slight to have contributed to the jury's verdict. *See State v. Bowie*, 92 Wis. 2d 192, 204–06, 284 N.W.2d 613 (1979) (concluding that the defendant's admission to four convictions when he had only one was harmless error).

¶ 31. As the supreme court observed in *Bowie*, the standard instruction (and the one given in this case) "does not direct the jury to give the number of convictions special consideration." *Id.* at 205. It is the fact of

result in what is, essentially, judicially sanctioned perjury, in that if some but not all of a witness's convictions are deemed admissible for impeachment purposes, the witness's proper response to the question, " '[H]ow many times [have you been convicted of a crime]?' " is actually false. *See State v. Fritz*, 212 Wis. 2d 284, 295–96, 569 N.W.2d 48 (Ct. App. 1997); *see also* 7 Daniel D. Blinka, WISCONSIN PRACTICE: EVIDENCE § 609.1, at 420 (2d ed. 2001).

past criminal conduct, not the number of occasions of it, that the jury is instructed to consider for credibility purposes. Indeed, both the supreme court and this court have recently concluded that where a jury is informed of a witness's criminal past, the precise number of the witness's convictions is unlikely to be outcome determinative.

¶ 32. The supreme court determined in *State v. Trawitzki*, 2001 WI 77, 244 Wis. 2d 523, 628 N.W.2d 801, that because the jury knew that certain State witnesses were incarcerated for their participation in the crimes involving the defendant, and they testified at trial "wearing jail or prison clothes," defense counsel's failure to impeach these witnesses with their exact number of prior convictions did not prejudice the defendant. *Id.*, ¶ 44. "While the exact number of convictions might have incrementally weakened the credibility of the witnesses, this decrease is not enough to establish a reasonable probability that the jury would have reached a different verdict." *Id.*

¶ 33. We reached a similar conclusion in *State v. Tkacz*, 2002 WI App 281, 258 Wis. 2d 611, 654 N.W.2d 37, *review denied*, 2003 WI 16, 259 Wis. 2d 103, 657 N.W.2d 708 (Wis. Jan. 14, 2003) (No. 02–0192–CR), rejecting the defendant's attempts to distinguish *Trawitzki*:

> *Trawitzki* was not about numbers or how the numbers came to be that way; it was about whether the jury had an adequate basis to question the credibility of the witnesses such that a failure to impeach with the exact number of convictions would likely not have affected the outcome of the case. *See Trawitzki*, 2001 WI 77 at ¶ 44. While we do recognize that the number of convictions a witness has is relevant to the jury's assessment of a witness's credibility, we are not convinced

that the result of Tkacz's trial would have been differ-
ent had the jury known the exact number of [a State
witness]'s convictions. Our confidence in the outcome of
the trial is not undermined by Tkacz's counsel's failure
to impeach [the witness] with her additional convic-
tions.

*Id.*, ¶ 24.

¶ 34. We recognize that in both *Trawitzki* and
*Tkacz*, the credibility of state witnesses was at issue,
not that of a defendant, and that the number of the
witnesses' convictions were understated rather than
overstated. Nonetheless, the discussion in these cases
supports our conclusion that once a jury is apprised of
a witness's past criminal conduct, evidence of the exact
number of the witness's prior convictions will rarely be
outcome determinative. We also acknowledge that the
issue addressed in *Trawitzki* and *Tkacz* was not harm-
less error but prejudice in the context of ineffective
assistance of counsel claims. As the supreme court has
noted, however, despite differences in terminology and
which party bears the burden of proof, the test for
harmless error is "essentially consistent with the test
for prejudice in an ineffective assistance" claim. *Harvey*,
254 Wis. 2d 442, ¶ 41 (citing *State v. Dyess*, 124 Wis. 2d
525, 544, 370 N.W.2d 222 (1985)).

¶ 35. Our conclusion might be different in this
case if the State had made repeated references to Gary's
five convictions, or had it hammered away at the point
during closing arguments. That was not the case,
however. As we have noted, the State made no reference
whatsoever to Gary's convictions during the evidentiary
portion of the trial, nor even in its initial closing
argument to the jury. The State's single reference to the
fact that Gary had five previous convictions came
during its rebuttal argument (see ¶ 6), only after

defense counsel had gone to considerable lengths in her argument to raise questions regarding the credibility of the stepdaughter's testimony. The State, moreover, coupled its brief reference with an immediate caution that the jury should use this information "only in terms of whether or not he is credible, not in terms of whether something else happened."

¶ 36. To this minimal use by the State of the conviction evidence, we add the fact of the court's cautionary instruction (see ¶ 7), which further minimized the potential for unfairly prejudicial use of the evidence by the jury. *See State v. Anderson*, 230 Wis. 2d 121, 132, 600 N.W.2d 913 (Ct. App. 1999) ("Since we presume that jurors follow the court's instructions, a cautioning instruction is normally sufficient to cure any adverse effect attendant with the admission of other acts evidence.") (citation omitted). Moreover, as we have noted, the court's instruction did not focus the jury's attention on the number of Gary's convictions but only on the fact of his past criminal conduct, of which it was destined to learn in any event.

¶ 37. Finally, we have reviewed the trial record and conclude that it contains ample evidence of Gary's guilt. *See, e.g., Dyess*, 124 Wis. 2d at 545 (a reviewing court should consider whether the conviction is "strongly supported by evidence untainted by error"). Gary's stepdaughter testified to the circumstances of the assaults, including their frequency, content and locations; her attempts to stop them; and Gary's efforts to discourage her from telling others about the assaults. The record also shows that she reported Gary's conduct to a number of third-persons, including her mother initially, and later, her father's girlfriend, social services personnel, and a Potosi police officer.

¶ 38. Gary, on the other hand, denied that he had engaged in the acts of which his stepdaughter accused him. He attempted to discredit the stepdaughter's testimony by noting various inconsistencies among her trial testimony, her preliminary hearing testimony and statements she made to police regarding details of the sexual assaults. Gary also pointed out that the girl's allegations of his sexual misconduct were inconsistent with (1) letters she wrote to Gary after her mother's death in which she stated that she wanted to return to Wisconsin to live with him, and (2) the failure of other individuals to discern or suspect a pattern of sexual abuse, in particular a social worker who did a placement study and assisted Gary's family in dealing with the behavioral problems of Gary's son.

¶ 39. We acknowledge that the outcome of the trial, as is true of many sexual assault prosecutions, hinged on whether the jury would believe the stepdaughter's testimony or Gary's denials. In other words, this was a "she said, he said" case. We also acknowledge that, given this fact, anything that tended to undermine Gary's credibility in the eyes of the jury would have some corresponding tendency to bolster the credibility of the girl's accusations against him. Notwithstanding the foregoing, however, the fact that the jury learned that Gary had five instead of two prior criminal convictions, did nothing to directly bolster the victim's testimony, and neither did it deprive the jury of any information that would have directly and adversely reflected on her credibility.

¶ 40. In short, the jury heard and was thus able to evaluate the inconsistencies in the stepdaughter's statements, together with all of the other reasons Gary was able to muster why jurors should disbelieve the girl's testimony. The jury's verdict shows, however, that ju-

rors, who were presumably rational, found her testimony credible. We simply cannot conclude that had Gary answered "two" instead of "five" when his counsel asked him how many times he had been convicted of a crime, rational jurors would have come to a different verdict. The State's limited use of the prior conviction evidence, the court's cautionary instruction concerning that evidence, and the significant damage to Gary's credibility that would have stemmed from his acknowledgement of two criminal convictions, all lead us to conclude that any error in this case did not contribute to the verdict and was thus harmless. *See Harvey*, 254 Wis. 2d 442, ¶ 48.

## CONCLUSION

¶ 41. For the reasons discussed above, we affirm the appealed judgment.

*By the Court.*—Judgment affirmed.

¶ 42. DYKMAN, J. (*dissenting*). Evidence that a witness has been convicted of a crime is strong medicine. Especially when a complainant testifies, "The defendant did it," and the defendant testifies, "No, I didn't," and there are no other witnesses who saw the crime alleged. With only "You did it," and "No, I didn't," a jury naturally casts about for reasons to believe one witness or the other. Evidence that the complainant or the defendant has been convicted of a crime is often the only difference between those witnesses, and it therefore can tip the scale one way or the other. That is the reason the supreme court adopted Wis. Stat. § 906.09 in 1973. The Judicial Council Committee's Note on § 906.09 reads:

> [T]here is apparent a growing uneasiness that impeachment [by evidence of conviction of crime] not only casts doubt upon [a defendant's] credibility, "but also may

result in casting such an atmosphere of aspersion and disrepute about the defendant as to convince the jury that he is an habitual lawbreaker who should be punished and confined for the general good of the community."

(Citation omitted.)

¶ 43. The committee continued: "The most significant feature of the rule is the requirement that the evidence of conviction be excluded if the judge determines that its probative value is outweighed by the danger of unfair prejudice."

¶ 44. WISCONSIN STAT. § 906.09 (2001–02)[1] attempts to prevent the improper use of prior conviction evidence by requiring that a trial court, prior to the admission of conviction evidence, hear the relevant facts pertaining to the convictions, and exercise discretion as to whether a jury should hear the evidence or not. The Judicial Council Committee's Note explains the factors a trial court might consider:

The Rule has been drafted with the view that a judge should consider whether from the lapse of time since the conviction, the rehabilitation or pardon of the person convicted, the gravity of the crime, the involvement of dishonesty or false statement in the crime, the elements noted in *Luck v. United States* [348 F.2d 763 (1965)], and *Gordon v. United States*, 127 U.S. App. D.C. 343, 383 F.2d 936 (1967), the probative value of the evidence of crime is substantially outweighed by the danger of undue prejudice.

¶ 45. The majority correctly concludes that the trial court erroneously exercised its discretion because it used an incorrect standard when addressing Gary B.'s

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

motion in limine to exclude evidence of his prior convictions. But it is what the majority next concludes that concerns me. "Nonetheless, the discussion in these cases supports our conclusion that once a jury is apprised of a witness's past criminal conduct, evidence of the exact number of the witness's prior convictions will rarely be outcome determinative."[2] Majority at ¶ 34. The majority has thus concluded that improper admission of the numbers of prior convictions is *ipso facto* harmless.

¶ 46. This cannot be correct. Under the majority's theory, a defendant who was eight times convicted of speeding, contrary to WIS. STAT. § 346.57(4) (1965), and once of disorderly conduct, contrary to WIS. STAT. § 947.01, could not successfully complain on appeal that the State improperly introduced evidence of the eight convictions, because even if the evidence was improperly admitted, the admission was *ipso facto* harmless. Human beings don't behave that way, and juries are comprised of human beings. To say that it doesn't matter whether a defendant answers "once," "nine times," or "57 times" does not comport with the way ordinary people think.

¶ 47. It is no answer to say that pursuant to WIS. STAT. § 906.09(3), evidence of conviction cannot be admitted until a judge first makes a determination whether the evidence should be excluded. That is the rule, but trials are busy places for counsel and trial judges alike, and rules are not always followed. Once an appellate court holds that any error in applying a

---

[2] The majority does not tell us what factors must be present in the rare case in which the wrong number of convictions is outcome determinative. The usual legal result of applying the adjective "rare" to an outcome is to assure that the outcome never occurs.

statute is *ipso facto* harmless, the significance of the statute is substantially reduced.

¶ 48. I would treat this case as we did in *Gyrion v. Bauer*, 132 Wis. 2d 434, 393 N.W.2d 107 (Ct. App. 1986). There, after concluding that evidence of the defendant's criminal record was improperly admitted, we said:

> While the improper admission of evidence of a prior conviction is not ipso facto prejudicial, we cannot conclude in this case that this evidence did not taint the jury's verdict. The evidence regarding the accident was conflicting and, in the absence of this prejudicial testimony, the jury may well have chosen to believe Gyrion's version of the accident. Because of the admission of clearly prejudicial evidence, the judgment is reversed and the cause remanded for a new trial.

*Id.* at 439 (citations omitted).

¶ 49. While the error in *Gyrion* was different from the error here, it is *Gyrion*'s analysis that is important. We cannot tell what Gary B.'s jury would have done had it not heard evidence of three of Gary B.'s five convictions. We can only pretend to know. The three convictions were between twenty-three and twenty-seven years old, and were for writing bad checks, disorderly conduct and assault. Gary B. was fined and put on probation for these crimes. He spent no time in jail. The relevance of crimes of this nature and this old cannot outweigh the danger of unfair prejudice in admitting them. The jury was not told of the nature of Gary B.'s old crimes, and indeed could not be told of their nature. *Voith v. Buser*, 83 Wis. 2d 540, 545–46, 266 N.W.2d 304 (1978). There was significant evidence from which a jury could conclude that the sexual assaults did not occur, and there was also significant evidence from which a jury could conclude that they did. The credibility of the defendant and of the complainant was critical.

I cannot conclude that there is "no reasonable possibility" that the error contributed to Gary B.'s conviction. *See State v. Smith*, 203 Wis. 2d 288, 300, 553 N.W.2d 824 (Ct. App. 1996). Accordingly, I respectfully dissent.