STATE of Wisconsin, Plaintiff-Respondent,†

v.

Walter SMITH, Defendant-Appellant.

Court of Appeals

*No. 94–3350–CR. Oral argument March 14, 1996.——Decided June 25, 1996.*

(Also reported in 553 N.W.2d 824.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Patricia K. Flood*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Jerome S. Schmidt*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SULLIVAN, J. Walter Smith appeals from a judgment of conviction for first-degree intentional homicide, as a party to a crime. He also appeals from an order denying his motion for postconviction relief. At issue is whether the trial court committed reversible error when it refused to allow Smith, under RULE 906.09, STATS., to impeach a State witness by introducing evidence of the witness's prior criminal convictions.[1] We conclude that the trial court misapplied Wisconsin law when it excluded the evidence, and further, that this error was not harmless. Accordingly, we must reverse both the judgment and order and remand for a new trial.

## I. BACKGROUND.

On July 16, 1993, Travis Craig was shot and killed while he stood at a phone booth with his uncle, George Owens. Craig was shot twice; a 9mm bullet recovered from Craig's body matched eight cartridge casings found in an alley adjacent to the phone booth.

The State's theory was that Owens was the intended target of the shooting, and that Smith and Troy Jackson, as parties to a crime, killed Craig while

---

[1] Smith raises four other issues on appeal that we do not discuss because we reverse on other grounds. *See State v. Dwyer*, 181 Wis. 2d 826, 830, 512 N.W.2d 233, 234 (Ct. App. 1994) (only dispositive issue need be addressed) (citation omitted).

shooting at Owens. The State's theory was that the shooting was the result of an ongoing argument between Jackson and Owens over the quality of cocaine sold by Jackson to Owens's girlfriend, Myrtle Robertson.

No physical evidence or eyewitness testimony linked either Smith or Jackson to the shooting; the State's case was based exclusively on circumstantial evidence. The key evidence was supplied through Robertson's testimony. Both the State and Smith concede that Robertson made conflicting statements concerning what occurred on the day of the shooting.

At trial, Robertson testified that on the day of the shooting, she saw Jackson and his girlfriend outside—Smith was not seen. She went inside and called her mother on the telephone and then heard a gunshot. She went outside and was told by friends that there was an altercation between Jackson and Owens. She went back inside and called her sister, and while on the phone, Jackson and Smith knocked on the door. Smith told her that if she did not tell them where Owens was, he would kill her. Smith had a gun that looked like an Uzi, and she thought Jackson had a firearm as well.

Robertson stated she then walked with Smith and Jackson to Owens's uncle's apartment, but was unable to get inside, so they returned to her apartment. Smith and Jackson left and came back, and Robertson attempted to call Owens's uncle, but was unsuccessful. She said Smith told her they didn't want George Owens, they wanted his son, because Owens was not worth killing. They then left her apartment.

Robertson stated that she then received a call from Jeanetta Owens and talked for about twenty minutes. Jeanetta Owens called again around midnight. While

Robertson was on the phone, someone knocked on the door. Jackson, his girlfriend, and Smith were outside.

Robertson stated that Smith told her that the police would be coming to ask her questions and he warned her not to give the police his name. Robertson stated he threatened to kill her if she did. At this time, neither Smith nor Jackson appeared to be carrying a gun.

Robertson gave variant statements to police. During Robertson's first questioning by police, she told them that it was Jackson, not Smith, who had a gun when they first visited her apartment. She gave a second statement in which she said Jackson had an Uzi-type gun. She later gave a third statement in which she said both Jackson and Smith were carrying guns.

Further, at the preliminary hearing, Robertson testified that Smith was alone when he came to her apartment the second time; however, at trial, she could not remember this testimony. During her trial testimony, Robertson was repeatedly challenged through her prior inconsistent statements and different versions of what she stated had occurred. Both Smith and the State concede that Robertson's testimony was severely tested on these points during cross-examination.

Smith argues that the trial court erred, however, before Robertson even testified at trial. Robertson, George Owens, and another State witness had criminal records—so did Smith and Jackson. Smith wished to impeach the State's witnesses, particularly Robertson, by questioning them about their prior convictions.

According to the transcript in this case, Robertson had two convictions in 1975 for injury by conduct regardless of life, one drug-related conviction in 1982, a

conviction for battery in 1985, and a conviction for drug possession with intent to deliver in 1990.

The trial court heard arguments on the admission of this evidence, and as will be discussed in detail below, ruled that none of the witnesses' prior convictions would be allowed into evidence. The jury convicted both Smith and Jackson of Craig's homicide, as party to a crime. Smith filed a postconviction motion alleging, *inter alia*, that the trial court erroneously exercised its discretion in excluding the prior conviction evidence. The trial court denied the motion, stating that the evidence was properly excluded.

## II. ANALYSIS.

### A. Prior Conviction Evidence.

Although the trial court excluded all evidence of prior convictions, Smith focuses his challenge on the exclusion of Robertson's prior convictions—so do we. Based on the trial court's ruling when compared to the standards set forth in Wisconsin law, we conclude that the trial court erroneously exercised its discretion in excluding evidence of Robertson's convictions.

Evidence that a witness has been convicted of a crime is admissible for the purpose of attacking the witness's credibility by an inference on the witness's character for truthfulness. RULE 906.09, STATS. (1993-94).[2] A prior conviction of any crime is relevant to the

---

[2] RULE 906.09, STATS. (1993-94), provides:

**Impeachment by evidence of conviction of crime. (1)** GENERAL RULE. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is admissible. The party cross-examining the witness is not concluded by the witness's answer.

credibility of a witness's testimony. *State v. Kruzycki,* 192 Wis. 2d 509, 524, 531 N.W.2d 429, 435 (Ct. App. 1995). RULE 906.09 "reflects the longstanding view in Wisconsin that 'one who has been convicted of a crime is less likely to be a truthful witness than one who has not been convicted.' " *State v. Kuntz,* 160 Wis. 2d 722, 752, 467 N.W.2d 531, 542 (1991) (citation omitted).

Whether to admit prior conviction evidence for impeachment purposes under RULE 906.09 is a matter within the discretion of the trial court. *Kruzycki,* 192 Wis. 2d at 525, 531 N.W.2d at 435. "When we review a discretionary decision, we consider only whether the trial court properly exercised its discretion, putting to one side whether we would have made the same ruling." *Id.* Nonetheless, a trial court's misapplication of the law is an erroneous exercise of discretion on which we must reverse the trial court's ruling. *State v. Hutnik,* 39 Wis. 2d 754, 763, 159 N.W.2d 733, 737 (1968).

A trial court considering whether to admit evidence of prior convictions for impeachment purposes should consider the following factors: (1) the lapse of time since the conviction; (2) the rehabilitation or par-

---

(2) EXCLUSION. Evidence of a conviction of a crime may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

(3) ADMISSIBILITY OF CONVICTION. No question inquiring with respect to conviction of a crime, nor introduction of evidence with respect thereto shall be permitted until the judge determines pursuant to s. 901.04 whether the evidence should be excluded.

(4) JUVENILE ADJUDICATIONS. Evidence of juvenile adjudications is not admissible under this rule.

(5) PENDENCY OF APPEAL. The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.

don of the person convicted; (3) the gravity of the crime; and (4) the involvement of dishonesty or false statement in the crime. *Kruzycki,* 192 Wis. 2d at 525, 531 N.W.2d at 435 (citation omitted). These factors are weighed in a balancing test to determine whether the probative value of the prior conviction evidence "is substantially outweighed by the danger of unfair prejudice." RULE 906.09(2), STATS. (1993-94).[3]

Here, the trial court refused to admit evidence of Robertson's prior convictions, based primarily, as the State reluctantly conceded at oral argument, on an erroneous interpretation of Wisconsin law. The trial court stated that it had a problem with giving the jurors information about the number of a witness's prior convictions "without telling them what the convictions are for."

When ruling on this issue at trial, the court stated:

> [A]s I've said many times from the bench in excluding evidence of these convictions for defendants, I have serious doubts about the probative value of any of this when the jury doesn't learn about what the conviction is for. If I was sitting on a jury and heard that someone had a prior conviction, I would lean forward and wait to hear whether it was for homicide, perjury, forgery, or retail theft of a pack of cigarettes before I would have the slightest idea what weight to give it in deciding someone's credibility.

---

[3] One commentator has opined that "the 'unfair prejudice' specified in the rule refers to the danger that the jury might use the evidence for something other than assessing the witness'[s] credibility." DANIEL D. BLINKA, WISCONSIN EVIDENCE § 609.1 at 312 (West's Wisconsin Practice Series, Vol. 7, 1991).

Again, when ruling on postconviction motions, the trial court posited that evidence of prior convictions in general had "low probative value." Hence, the trial court ruled its "principal concern [was] that jurors, not knowing what the[ ] convictions [we]re for, might give them much greater weight than they deserve." We are concerned that the trial court's general attitude on prior conviction evidence, as reflected throughout the record, tainted its analysis of the probative value of Robertson's prior convictions.

Wisconsin law is very clear that if evidence of prior convictions is admitted, witnesses may be asked if they have been convicted of a crime, and if the answer is yes, the number of convictions. *State v. Midell,* 39 Wis. 2d 733, 738-39, 159 N.W.2d 614, 617 (1968). The nature of the convictions is not to be discussed by the proffering party. *See id.* As one commentator has noted about this "counting rule":

> The convictions themselves do not necessarily have to bear on a person's character for truthfulness. . . . The assumption is that the longer the criminal record, the less credible the individual. This reasoning applies regardless of the nature of the prior conviction. Burglary, murder or criminal drunk driving convictions are deemed as probative of credibility under this rule as a false swearing conviction. In short, it is not necessary to directly link the nature of the offense with the character for truthfulness; the link is provided by the fact of conviction.

DANIEL D. BLINKA, WISCONSIN EVIDENCE § 609.1 at 311 (West's Wisconsin Practice Series, Vol. 7, 1991).

Thus, the heart of the trial court's ruling is contrary to Wisconsin law—the law presumes that the number of convictions is relevant to a witness's credi-

bility, even without a jury being informed about the nature of the convictions. The trial court's discretionary ruling was primarily guided by a consideration that is contrary to the presumptions of Wisconsin law; thus, the trial court misapplied the law on this point.

The trial court also premised its ruling on its conclusion that evidence of prior convictions was not very probative because "most of [the witnesses] were involved in drugs." Indeed, the court stated that evidence of a prior conviction, "without knowing what it's for doesn't . . . really add much to the mix." In essence, the trial court concluded that because many of the witnesses had sordid histories involving drugs, the probative value of these same witnesses' criminal records was minimized.

While this may be a reasonable consideration in the trial court's overall balancing of probative value versus unfair prejudice, the law in this State presumes that " 'one who has been convicted of a crime is less likely to be a truthful witness than one who has not been convicted.' " *Kuntz,* 160 Wis. 2d at 752, 467 N.W.2d at 542 (citation omitted). Thus, evidence of convictions could influence the jury's consideration of a witness's testimony above and beyond that of other "negative" witness behaviors also brought to light at trial. Indeed, contrary to the trial court's reasoning, convictions are presumed to "add much to the mix." Once again, we fear that the trial court's attitude on this evidence colored its ruling.

Finally, we note that the trial court did not individualize its analysis to each of the witnesses' prior conviction evidence; the trial court made a blanket ruling excluding all the evidence.[4] It reasoned that if the

_____
[4] The trial court made its blanket ruling excluding the prior conviction evidence of all witnesses, and when asked specifi-

evidence was excluded as to one witness, it would be excluded as to all witnesses. The trial court stated at the postconviction hearing that it was necessary to look at all the witnesses together for consistency purposes.

■

While consistency in evidentiary rulings is a necessity, the trial court must still look at each witness individually and consider the proper factors in weighing whether the probative value of prior conviction evidence for that witness is substantially outweighed by the danger of unfair prejudice. It is possible that while one witness's prior conviction evidence may not survive the balancing test, another witness's may. A blanket ruling, while expedient and consistent, fails to show a consideration of the proper factors with respect to each witness, and thus, is an erroneous exercise of discretion. *See McCleary v. State,* 49 Wis. 2d 263, 277-78, 182 N.W.2d 512, 520 (1971) (concluding the failure to consider proper factors is an erroneous exercise of discretion). Further, an individualized ruling is even more paramount in a case such as this where there is a paucity of physical evidence connecting the defendants to the crime, thereby placing the credibility of each witness's testimony in the spotlight of the jury's consideration.

■

In short, we conclude the trial court erroneously exercised its discretion in excluding evidence of Robertson's prior convictions. We need not reverse Smith's judgment of conviction, however, if this error was harmless.

---

cally about Robertson, the trial court stated that nothing about Robertson changed its mind "about the probative value of the evidence."

## B. Harmless Error Analysis.

Not all errors require reversal. The test is "whether there is a reasonable possibility that the error contributed to the conviction." *State v. Dyess,* 124 Wis. 2d 525, 543, 370 N.W.2d 222, 231-32 (1985). If the test is met, reversal and a new trial are required. *Id.* at 543, 370 N.W.2d at 232. The burden of proving that there is no reasonable possibility that the error contributed to the conviction is "on the beneficiary of the error." *State v. Sanchez,* 201 Wis. 2d 219, 231, 548 N.W.2d 69, 74 (1996). In this case, that burden falls on the State.

Whether the exclusion of the evidence was harmless was the key issue at oral argument to this court. The State argued that any error in excluding Robertson's prior conviction record was harmless because "her credibility was tested to the limit" based on the inconsistent statements she made about the events surrounding Craig's shooting. Thus, the State argued that the jury, in reaching its verdict, had already considered Robertson's credibility.

Smith's counsel countered, arguing that the credibility of Robertson's testimony was the "linchpin" of the State's case against Smith and Jackson. Counsel stated, "Without Myrtle Robertson's testimony, there is no link at all between the co-defendants and the crime. Her credibility *was* the issue in the case." Hence, Smith argues that if the jurors had been presented with the fact that Robertson was a convicted criminal, this would have prodded them away from believing her testimony concerning the homicide.

We do not know how the jury in this case appraised Robertson's testimony, nor do we know what effect, if

any, knowledge of Robertson's criminal record would have had on the jury. This was a case premised on circumstantial evidence. We agree with Smith that Robertson's testimony seemed to be the "linchpin" connecting him and Jackson to the homicide. Indeed, Robertson's testimony on the guns and the co-defendants' allegedly incriminating statements about the shooting provided strong circumstantial evidence of their involvement in Craig's homicide. We cannot divine what the jury would have concluded about Smith's guilt or innocence if it had rejected the veracity of Robertson's testimony in light of her criminal record. Nor can we determine how the jury would have viewed the remaining circumstantial evidence if it had rejected Robertson's testimony. As was once astutely written, "Circumstantial evidence is a very tricky thing . . .; it may seem to point very straight to one thing, but if you shift your own point of view a little, you may find it pointing in an equally uncompromising manner to something entirely different."[5]

Given the circumstantial nature of the State's case against Smith and the "crucial and controlling feature" of Robertson's testimony, we cannot "be sure that the error did not contribute to the guilty verdict." *Dyess,* 124 Wis. 2d at 547, 370 N.W.2d at 233. The State failed to meet its burden that there is no reasonable possibility that the error contributed to the conviction. *See Sanchez,* 201 Wis. 2d at 231, 548 N.W.2d at 74. The error was not harmless.

---

[5] 2 ARTHUR C. DOYLE, *The Boscombe Valley Mystery, in* THE ANNOTATED SHERLOCK HOLMES 134, 136 (William S. Baring-Gould ed., Wings Books 1992) (1967) (internal citations omitted).

301

### III. SUMMARY.

In short, the trial court erroneously exercised its discretion in excluding evidence of Robertson's prior convictions. Further, this error was not harmless. Accordingly, we must reverse both the judgment of conviction and the order denying postconviction relief and remand the matter for a new trial.

*By the Court.*—Judgment and order reversed and cause remanded for a new trial.