STATE of Wisconsin, Plaintiff-Respondent,

v.

Amos L. SMALL, Defendant-Appellant.†

Court of Appeals

*No. 2012AP2049–CR. Submitted on briefs August 6, 2013.*
*—Decided September 4, 2013.*

2013 WI App 117

(Also reported in 839 N.W.2d 160.)

† Petition for Review.

Before Fine, Kessler and Brennan, JJ.

¶ 1. FINE, J. Amos Small appeals the judgment entered on a jury verdict convicting him of armed

robbery with use of force, *see* WIS. STAT. § 943.32(2), as party to a crime, *see* WIS. STAT. § 939.05.[1] He also appeals the circuit court's denial of his motion for postconviction relief.[2] Small complains about three things that, as we will see, implicate his right to a constitutionally effective trial lawyer. He contends that the trial court: (1) deprived him of his right to a public trial; (2) erroneously permitted a police officer to testify as to what he perceived Small said on a surveillance video; and (3) erroneously did not exclude evidence that he claims was inadmissible hearsay. We affirm.

## I.

¶ 2. The State accused Small of being a stalking horse for his cousin Brandon Joiner when Joiner used a gun to rob the owners and employees of a furniture store. Small was tried alone.

¶ 3. The store's co-owner told the jury that Small came into the store around 5 p.m. and acted suspiciously. A few minutes later, a masked gunman walked in and took approximately ninety to one-hundred dollars. The co-owner testified that when he saw the armed robber he yelled " 'Gun. Gun.' " to alert his co-owner brother, and that Small responded " 'No. No. No.' " The gunman also took a cell phone from one of the store's employees.

¶ 4. Police ultimately focused on Joiner as the gunman, and there was no dispute at Small's trial that Joiner was the armed robber who took the money and the employee's cell phone. Smart police work connected Joiner to the robbery.

---

[1] The Honorable Dennis R. Cimpl presided over Amos Small's trial.

[2] The Honorable Michael D. Goulee denied Small's motion for postconviction relief.

¶ 5. Some two months before the robbery, police had stopped a car in which Joiner was a passenger. The driver, Lamar Truss, gave his phone number to the police. A police officer testified that he got "a document" from the store employee whose cell phone the gunman took that "show[ed] the phone numbers called on her phone" after the furniture-store robbery. The officer discovered that the stolen phone had dialed Truss's phone number after the robbery. Further, a cell phone the police found in a car that Joiner drove had called the employee's stolen phone. The contact list on Small's cell phone had two of Joiner's phone numbers. Joiner's mother testified that Small was her nephew and that Joiner and Small would see each other often.

¶ 6. We now turn to Small's contentions on this appeal.

## II.

¶ 7. Small's appellate claims largely implicate his right to a constitutionally effective trial lawyer. To establish constitutionally ineffective legal representation, a defendant must show: (1) deficient representation; and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove deficient representation, a defendant must point to specific acts or omissions by the lawyer that are "outside the wide range of professionally competent assistance." *Id.*, 466 U.S. at 690. To prove prejudice, a defendant must demonstrate that the lawyer's errors were so serious that the defendant was deprived of a fair trial and a reliable outcome. *Id.*, 466 U.S. at 687. Thus, in order to succeed on the prejudice aspect of the *Strickland* analysis, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*, 466 U.S. at 694. This is not, however, "an outcome-determinative test. In decisions following *Strickland,* the Supreme Court has reaffirmed that the touchstone of the prejudice component is 'whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.' " *State v. Smith,* 207 Wis. 2d 258, 276, 558 N.W.2d 379, 386 (1997) (citations and quoted source omitted). We need not address both aspects of the *Strickland* test if the defendant does not make a sufficient showing on one, *see Strickland,* 466 U.S. at 697, and we decide *de novo* the legal issues underlying an assertion that a lawyer was constitutionally ineffective, *see State v. Johnson,* 153 Wis. 2d 121, 128, 449 N.W.2d 845, 848 (1990).

### A. Right to a public trial.

¶ 8. The Sixth Amendment to the United States Constitution guarantees "a public trial" to every criminal defendant.[3] The Sixth Amendment is binding on the states through the Constitution's Fourteenth Amendment. *Gannett Co., Inc. v. DePasquale,* 443 U.S. 368, 379

---

[3] The Sixth Amendment reads in full:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

(1979). Article I, § 7 of the Wisconsin Constitution also guarantees a public trial for every criminal defendant.[4] *See also State v. Ndina*, 2009 WI 21, ¶¶ 41–42, 315 Wis. 2d 653, 676–677, 761 N.W.2d 612, 623. Not every exclusion of a member of the public, however, violates a defendant's right to a public trial. *Id.*, 2009 WI 21, ¶ 48 & n.23, 315 Wis. 2d at 681–682 & n.23, 761 N.W.2d at 625–626 & n.23. "The Supreme Court has described four values furthered by the Sixth Amendment guarantee of a public trial: (1) to ensure a fair trial; (2) to remind the prosecutor and judge of their responsibility to the accused and the importance of their functions; (3) to encourage witnesses to come forward; and (4) to discourage perjury." *Id.*, 2009 WI 21, ¶ 49, 315 Wis. 2d at 682–683, 761 N.W.2d at 626 (internal quotation marks and quoted sources omitted). Wisconsin has not yet decided whether, as with many rights the deprivation of which could have been cured if called to the trial court's attention, *see State v. Huebner*, 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 492, 611 N.W.2d 727, 730 ("Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal.") (constitutionality of six-person juries), the right to a public trial may be forfeited if the defendant does not object timely, *see Ndina*, 2009 WI 21, ¶ 38, 315 Wis. 2d at 674–675, 761 N.W.2d at 622 (postponing for another day whether the public-trial right can be

---

[4] Article I, § 7 reads in full:

In all criminal prosecutions the accused shall enjoy the right to be heard by himself and counsel; to demand the nature and cause of the accusation against him; to meet the witnesses face to face; to have compulsory process to compel the attendance of witnesses in his behalf; and in prosecutions by indictment, or information, to a speedy public trial by an impartial jury of the county or district wherein the offense shall have been committed; which county or district shall have been previously ascertained by law.

waived or forfeited). With this background, we now turn to what happened in Small's trial.

¶ 9. The trial was fully public except that on the second day, the trial court excluded a man whom the State asserted had implicitly threatened a witness—one of Small's friends who testified that Joiner and Small were cousins. The witness worked for the Milwaukee Police Department as an aide, and was in court with her stepfather, a Milwaukee police officer. After the jury left, the State told the trial court that the witness reported to him that the man approached her in the hallway after she had testified and "told her words to the effect people should keep their mouth shut." The State said that the witness's stepfather also heard what the man said. The trial court reacted immediately.

> THE COURT: Sir, you are now banned from this trial. You will not come back. You are forbidden from coming into this courtroom.
>
> Anything else, Mr. [prosecutor]?
>
> [The Prosecutor]: No, sir.
>
> [The Defense Lawyer]: If I may, Judge.
>
> [The Prosecutor]: Sorry, I know what the other thing was. [The witness]'s stepfather also indicated that people in the gallery while she was testifying were making hand gestures to the effect, oh, that's baloney or that's not true, whatever she was saying.

The trial court then warned the spectators that if it saw "any reaction to anything that happens in this courtroom, if you have any contact whatsoever with any of the witnesses, you'll be subject to arrest and banned from this courtroom just like the gentleman that I ordered out of the courtroom already."

¶ 10. The defense lawyer objected to excluding the man who allegedly approached the witness, but declined the trial court's offer to hold an evidentiary hearing as to whether the exclusion was justified.

> [The Defense Lawyer]: Judge, I would object to the banning of the gentleman. I don't think the court has that authority to ban. This is an open trial open to the public. All we have right now is a hearsay statement from —
>
> THE COURT: Do you want me to take testimony? I'll interrupt this trial at 1:30 and we'll take testimony from the witness, her father, anybody else that saw it, and this gentleman.
>
> If that's what you want me to do, I'll do that. Or I will simply make the order and hope that he obeys it based on the representation of [the prosecutor].
>
> Your choice, Mr. [defense lawyer]. You want to think about it over the noon hour and let me know me [*sic*], that's fine too. Right now the order is he's out of the courtroom based upon the representation [the prosecutor] made to me.
>
> [The Defense Lawyer]: We don't want a delay in the trial.

¶ 11. The trial court handled the situation with aplomb and appropriate caution. First, preventing witness intimidation of both those who have already testified and those who have not yet testified ensures three of the four reasons underlying the right to a public trial that *Ndina* adopted: (a) fairness of the trial; (b) encouraging persons to testify; and (c) discouraging fear-based perjury. Smith's trial was open to everyone but the man who, according to what we have in the Record, had implicitly threatened the witness. Further, the trial court's order was no broader than necessary to protect

those interests. *See id.*, 2009 WI 21, ¶ 83, 315 Wis. 2d at 699, 761 N.W.2d at 634. Most significantly, however, the trial court offered to hold an evidentiary hearing that would either confirm or rebut the prosecutor's assertion. *Cf. id.*, 2009 WI 21, ¶ 82, 315 Wis. 2d at 699, 761 N.W.2d at 634 (objecting lawyer must suggest reasonable alternatives to excluding persons from a public trial).

¶ 12. Small has not even alleged that the exclusion from the trial of the man who allegedly approached the witness deprived him of a fair trial, and by no stretch of the imagination did the trial court's exclusion of that person come anywhere near justifying imposing a *per se* rule here that would force a do-over. *See id.*, 2009 WI 21, ¶ 48 n.23, 315 Wis. 2d at 681 n.23, 761 N.W.2d at 625 n.23 (Cases "hold that a *closure* may be viewed as trivial and that, under some circumstances, a closure may be so trivial as not to violate the Sixth Amendment even if the closure is unjustified.") (emphasis in original). Thus, in an ineffective-assistance-of-counsel context, Small was not prejudiced by his lawyer's decision to reject the trial court's offer to hold an evidentiary hearing before cementing its order to exclude the man.

*B. Police officer's testimony.*

■

¶ 13. As we have seen, when the gunman walked into the furniture store, the co-owner yelled " 'Gun. Gun.' " to alert his brother. The co-owner testified that Small responded " 'No. No. No.' " During the testimony of Milwaukee police officer Richard Litwin, the jury saw and heard part of a surveillance video that covered those moments. Apparently the sound was not terribly

clear because the officer said that he had watched the video "[p]robably between 50 and 100" times. The prosecutor then asked Litwin to interpret what the video revealed Small said after the store's co-owner yelled "Gun. Gun."

> Q. Are you able to tell — Are you able to tell us what Mr. Small says based on your repeated listening after [the co-owner] says gun, gun?
>
> A. Yes.
>
> Q. What is it?
>
> A. No, no, there is no gun."

The prosecutor played that segment for the jury four times, and Litwin interjected a correction:

> A. To be honest with you, to me it sounds like he says at this point no, no, what's going on in here. But again, I was privy to watching this 50 to 100 times so I don't know if I documented that it was at this exact time but to me, right now, it sounds a little different.
>
> Q. It doesn't sound like gun at this point, does it?
>
> A. I think [the co-owner] is saying gun, gun, but I believe Amos Small says something slightly different here.
>
> Q. So you would agree with me that as you listen to this video, the audio can be difficult unless someone is shouting, it's difficult to understand what they are saying?
>
> A. Yes.

Small's trial lawyer did not object to any of this. Thus, we consider the issue in an ineffective-assistance-of-counsel context. *See State v. Carprue*, 2004 WI 111, ¶ 47, 274 Wis. 2d 656, 678, 683 N.W.2d 31, 41. Small contends that his lawyer was ineffective because he did

not object and, he argues, "[t]he officer was in no way qualified to render such an expert opinion about what Mr. Small or any individual might be saying on the surveillance video." We disagree.

¶ 14. First, WIS. STAT. RULE 907.01, permitted the officer to give his opinion because it was "rationally based" on his "perception." RULE 907.01 provides:

> If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are all of the following:
>
> **(1)** Rationally based on the perception of the witness.
>
> **(2)** Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.
>
> **(3)** Not based on scientific, technical, or other specialized knowledge within the scope of a witness under s. 907.02(1).

WISCONSIN STAT. RULE 907.02(1) reads:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if the testimony is based upon sufficient facts or data, the testimony is the product of reliable principles and methods, and the witness has applied the principles and methods reliably to the facts of the case.[5]

---

[5] These rules were modified by 2011 Wis. Act 2, §§ 33, 34, & 34M. The effective date of these provisions in criminal cases is unclear because 2011 Wis. Act 2, § 45(5) seems to fix the effective date for civil cases only, saying that the rules "first

¶ 15. Absent the use of specialized scientific or technical equipment to analyze the audio, the officer was able to give his lay opinion as to what Small said because expert opinion is not needed if the matter is within the ken of the general population. *See* Gregory P. Joseph & Stephen A. Saltzburg, EVIDENCE IN AMERICA, THE FEDERAL RULES IN THE STATES, ch. 50 at 3 (Michie 1987) (The lay witness's opinion is admissible as such if it is based on knowledge that is "common to members of the community.") (commenting on Rule 701 of the Federal Rules of Evidence, on which WIS. STAT. RULE 907.01 was based). Thus, in *United States v. Begay*, 42 F.3d 486, 502–503 (9th Cir. 1994), *cert. denied,* 516 U.S. 826, a law-enforcement officer was permitted to give his lay opinion under Rule 701 of the Federal Rules of Evidence as to what a video showed when an enhanced version was played for the jury at a slow speed, when the officer viewed the video more than "100 times" and closely studied some "800 photographs" of incidents recorded by the video, even though he was not at the events recorded or photographed. Further, the situation here is analogous to what WIS. STAT. RULE 909.015(5) PERMITS—testimony authenticating someone's voice may be by lay "opinion." The jurors here heard the audio as well as the co-owner's testimony of what Small said, and were thus able to use their own life experiences in assessing whether Litwin's opinion was accurate. This

apply to actions or special proceedings that are commenced on" February 1, 2011. The Act does not specifically say when these rules take effect for criminal cases, but 2011 Wis. Act 2, § 45(1), which deals with amendments to the criminal code, specifies that those amendments "first appl[y] to acts or omissions committed on" February 1, 2011. Small was alleged to have participated in the armed robbery at issue here in April of 2011, and the trial started in August of 2011. So the new rules applied to Small's trial irrespective of the ambiguity.

is in contrast to those situations where expert opinion is needed, because in those cases jurors have no independent life experiences on which to rely but must rather referee the battle of experts presented by the parties.

¶ 16. Second, as noted, this issue is presented to us in an ineffective-assistance-of-counsel context. Small has not shown how, under any conceivable view of the circumstances here, he was prejudiced by Litwin's testimony, especially because the jury heard the audio four times, and the co-owner testified what he heard Small say. Moreover, Small has not even alleged that a sophisticated technical analysis would reveal that any of the versions of what he said in the store were not essentially accurate. He has not, therefore, even come close to showing *Strickland* prejudice, or even that his trial lawyer was deficient in not objecting to Litwin's testimony.

C. *Alleged hearsay.*

¶ 17. Small also claims that an officer's recitation at the trial of the number that Truss gave to the police some two months before the furniture-store robbery was inadmissible hearsay. Small's trial lawyer did not object, however, and a sustained objection would have permitted the State to prove Truss's phone number in other ways (such as, perhaps, subpoenaing telephone-company records).[6] *See Huebner*, 2000 WI 59, ¶ 10, 235 Wis. 2d at 492, 611 N.W.2d at 730. Further, Small points

---

[6] We thus disagree with the State's assertion that the phone number was not introduced for its "truth," and was not, therefore, "hearsay." *See* WIS. STAT. RULE 908.01(3) (defining "hearsay" as an out-of-court declaration "offered in evidence to prove the

to nothing in the Record, and did not make an offer of proof in his motion for postconviction relief, to support any inference that the number was *not* Truss's number. Accordingly he has not shown *Strickland* prejudice. *See State v. Flynn,* 190 Wis. 2d 31, 48, 527 N.W.2d 343, 349–350 (Ct. App. 1994) (A defendant who alleges that his lawyer was ineffective must show what the lawyer should have done and how it would have accomplished the result the defendant now seeks.).

*By the Court.*—Judgment and order affirmed.

truth of the matter asserted"). Unless the number *was* Truss's, that the employee's stolen phone called it would not have been relevant.