BRENNAN, J.
¶ 1 Johnnie Lee Tucker appeals a judgment of conviction for one count of first-degree intentional homicide and one count of possession of a firearm by a felon. A jury convicted Tucker of both counts arising from a fatal shooting outside of a Milwaukee tavern. The victim, Colin Alexander, had lived with Tucker's ex-girlfriend and Tucker's son for about nine years. Four days before Alexander's death, Tucker had filed a petition for a restraining order against Alexander in order to keep Alexander away from his son.
¶ 2 At trial, the evidence included video from several of the tavern's interior and exterior security cameras. When the videos were shown to the jury, a detective testified about how the night vision cameras inside of the dark tavern distorted colors and how the multiple camera angles made it hard to piece together the video footage to track the movement of various people who were seen inside and outside of the crowded tavern at the time of the shooting. After explaining that he had reviewed the footage "many times[,]" the detective testified that the person who was seen on camera outside of the tavern scuffling with the victim and then shooting him was the same person who a few moments before could be seen walking into and then exiting from the tavern.
¶ 3 Tucker argues on appeal that the trial court erred in allowing the detective's testimony as lay opinion testimony pursuant to WIS. STAT. § 907.01 (2015-16).[1] Tucker states that "the detective identified Mr. Tucker , seen in the video the detective was viewing as just entering the tavern, as 'the shooter outside' " (emphasis added). He argues that the detective "had insufficient personal knowledge to enable him to identify Mr. Tucker ," and that "when the officer , who knew Mr. Tucker only from the video he was viewing, identified Mr. Tucker as 'the shooter outside,' he 'usurped the jury's function' " (emphasis added).
¶ 4 Tucker mischaracterizes the testimony in question. There is absolutely no support in the record for the assertion that the detective identified Tucker as the shooter. The detective testified that the person seen inside of the tavern was the "suspect" or the "subject" who walked outside of the tavern and shot the victim. The testimony, which was followed by a cautionary instruction by the trial court, merely concerned the movements of the shooter inside and outside of the tavern but never identified the shooter as Tucker.
¶ 5 Because Tucker's legal arguments are premised on a misstatement of the facts-that a law enforcement officer's testimony identified the accused as the guilty person to the jury-they are unpersuasive. We conclude that the trial court properly admitted the detective's testimony under WIS. STAT. § 907.01. We therefore affirm.
BACKGROUND
¶ 6 Tucker was charged in connection with the murder of Alexander and the non-fatal shooting of Alexander's brother, T.A. At Tucker's jury trial, two witnesses testified that Tucker was in the tavern on the night of the shooting. The bartender who was working that night testified; she stated that she knew Tucker personally and identified herself and Tucker on the surveillance video inside of the tavern. Tucker's ex-girlfriend, who is the mother of his son, identified Tucker as the shooter when she was shown the surveillance video during her testimony.
¶ 7 The testimony relevant to this appeal is the testimony of Detective Nathan Butz. He testified as follows:
- The tavern's interior and exterior surveillance system involved ten cameras.
- The cameras captured the shooting.
- He had reviewed the surveillance videos from interior and exterior cameras "many times" prior to coming to court.
- In his investigation he had learned the identity of several persons shown in the video: the murder victim; the murder victim's two brothers, one of whom was also shot; the tavern's security guard; and the bartender. He also testified that police had been unable to identify several of the bystanders seen on the surveillance video.
- An image from one of the interior surveillance cameras showed the same person who would moments later be captured by the exterior surveillance cameras. He testified that "the subject pictured on the left-hand side of the screen that just entered the tavern would be the shooter outside."
¶ 8 When the detective testified that the person seen on the surveillance video inside of the tavern was the same person who was later seen outside of the tavern, trial counsel objected that only the jury could determine whether the person seen on the internal surveillance video was the same person who appeared on the external surveillance video moments later. Following a side bar, the trial court addressed the jury:
So ladies and gentlemen of the jury, ultimately it's going to be your determination of what you see in this video and who you think is the shooter and of course ultimately whether the defendant is that person.... Ultimately you're going to have to decide those ultimate issues, so the detective's comments I think are limited just to that, they're not the ultimate conclusion, but I think you're entitled to the benefit of the thought process and observations and evidence gathered as part of the investigation.
¶ 9 When the detective's testimony continued, he continued responding to the State's questions about what the video images showed that was significant to the investigation. The following testimony illustrates the way the detective consistently answered the prosecutor: "You see the victim exit the entry door followed by one or two other subjects and then the suspect in this investigation " and "The suspect in the offense was at the bar earlier and had a short conversation with the bartender, walked briskly to the left ... towards the south end of the bar" (emphasis added).
¶ 10 Following the testimony, the trial court explained the ruling on the testimony in more detail after the jury had left the courtroom.
There was an objection by the defense to Detective Butz's narration of, or his understanding or explanation of what was being depicted in the surveillance videos.... [T]he jury is entitled to the benefit of the thought process of the investigation and then logically how that goes to next steps in the investigation, but ultimately is going to have to make the ultimate conclusion about what the video shows.
I think that State [v. ] Small , 2013 [WI] App 117, supports that conclusion. In that case the court of appeals ruled that a police officer was properly allowed to offer his lay opinion as to what a person said on a recording when the officer listened to it 50 to 100 times. The jury listened to it and no specialized scientific or technical equipment was used to analyze the audio because the officer's opinion of what was said was rationally based on his perception.
I think that's really very much the case here. This is an appropriate lay opinion under [ WIS. STAT. §] 907.01. These videos are not easy to follow. In order to make the kinds of decisions to investigate and further work through this crime I am sure that the detective watched these videos many times. In fact, he testified to that yesterday that he watched them many times. The jury doesn't have the foundation to know that the time stamp is correct. That's something that Officer Butz testified to that he verified through his own perception to have that fact be established. He testified to his understanding of the way the night vision cameras inside the bar affect the vision, the way colors appear. He spent lots of time watching people go in and out with hats and no hats and different colored clothing and all of the things that he did and I think that is a permissible lay opinion.
I gave a limiting instruction immediately after the objection because I did want to remind the jury of that distinction[.]
¶ 11 The jury convicted Tucker. He now appeals.
DISCUSSION
I. Standard of review and relevant law.
¶ 12 Tucker challenges the trial court's ruling that the detective's testimony was admissible as lay opinion testimony under WIS. STAT. § 907.01.
¶ 13 The admission of evidence lies within the sound discretion of the trial court. State v. Pepin , 110 Wis. 2d 431, 435, 328 N.W.2d 898 (Ct. App. 1982). When we review a discretionary decision, we examine the record to determine if the trial court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach. See State v. Rogers , 196 Wis. 2d 817, 829, 539 N.W.2d 897 (1995).
¶ 14 The testimony in question was admitted as lay opinion testimony. The statute that governs such testimony is WIS. STAT. § 907.01, which states as follows:
If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are all of the following:
(1) Rationally based on the perception of the witness.
(2) Helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.
(3) Not based on scientific, technical, or other specialized knowledge within the scope of a witness under s. 907.02(1).
¶ 15 In State v. Small , this court addressed the question of whether the lay opinion statute applied to allow testimony from a police officer concerning what he heard the defendant saying on a surveillance video of a robbery. See id. , 2013 WI App 117, ¶¶ 13-14, 351 Wis. 2d 46, 839 N.W.2d 160. The defendant had argued that the officer's testimony was inadmissible because he was not qualified to offer expert testimony on what was being said. Id. , ¶ 13. This court disagreed, explaining that lay opinion was based only on a witness's perception:
Absent the use of specialized scientific or technical equipment to analyze the audio, the officer was able to give his lay opinion as to what Small said because expert opinion is not needed if the matter is within the ken of the general population. See Gregory P. Joseph & Stephen A. Saltzburg, EVIDENCE IN AMERICA, THE FEDERAL RULES IN THE STATES, ch. 50 at 3 (Michie 1987) (The lay witness's opinion is admissible as such if it is based on knowledge that is "common to members of the community.") .... Thus, in United States v. Begay , 42 F.3d 486, 502-503 (9th Cir. 1994), a law-enforcement officer was permitted to give his lay opinion under Rule 701 of the Federal Rules of Evidence as to what a video showed when an enhanced version was played for the jury at a slow speed, when the officer viewed the video more than "100 times" and closely studied some "800 photographs" of incidents recorded by the video, even though he was not at the events recorded or photographed.
Id. , ¶ 15.
¶ 16 This court distinguished between lay opinion admissible under WIS. STAT. § 907.01 and expert opinion admissible under WIS. STAT. § 907.02 as follows: "The jurors here heard the audio as well as the co-owner's testimony of what Small said, and were thus able to use their own life experiences in assessing whether [the lay] opinion was accurate." Id. "This is in contrast to those situations where expert opinion is needed, because in those cases jurors have no independent life experiences on which to rely but must rather referee the battle of experts presented by the parties." Id.
II. The detective's lay opinion testimony satisfied the three requirements of WIS. STAT. § 907.01 and was properly admitted.
¶ 17 Tucker argues that the trial court erred in admitting the detective's testimony narrating the video. He argues that the testimony "identified Mr. Tucker ... as 'the shooter outside.' " He argues that the officer did not have a basis for identifying Tucker because he had no personal knowledge of Tucker prior to the night of the shooting. He also argues that the testimony improperly answered the ultimate question before the jury as to whether Tucker was the shooter.[2]
¶ 18 As noted above, we conclude that the record contains no support for the factual assertion on which Tucker's arguments are based. In the testimony in question, Tucker is never identified as the shooter. The testimony merely tracks the movements of the shooter-identified by the witness as "the suspect"-inside and outside of the tavern. In a well-crafted jury instruction, the trial court correctly told the jury, that it was free to disregard even the opinion about the movements of the shooter. The trial court told the jurors they were responsible for determining what they saw on the video and also for the separate question, which the detective's testimony did not answer, of whether the defendant was the person seen in the video. We assume that "a properly given admonitory instruction is followed[.]" State v. Leach , 124 Wis. 2d 648, 673, 370 N.W.2d 240 (1985). We also assume that the "jury acted according to law[.]" State v. Pitsch , 124 Wis. 2d 628, 644 n.8, 369 N.W.2d 711 (1985) (quoting Strickland v. Washington , 466 U.S. 668, 694 (1984) ).
¶ 19 Moreover, outside of the presence of the jury, the trial court clearly set forth the proper legal basis for its ruling admitting the testimony. The trial court's analysis addressed each of the three requirements for lay testimony under the statute: based on the witness's perception; helpful to the determination of a fact in issue; and not based on specialized knowledge. It stated that the detective's testimony about the surveillance video was "verified through his own perception" as to the accuracy of the time stamp and as to the way the night vision cameras affected the colors shown on the videos. It noted that he had watched the videos many times and observed the multiple angles of various "people go[ing] in and out" of the tavern. The court noted that it was helpful to the jury because "[t]hese videos are not easy to follow." The trial court compared the detective's testimony to the officer's testimony in Small concerning what was said on surveillance footage, noting that in Small , "[t]he jury listened to it and no specialized scientific or technical equipment was used to analyze the audio because the officer's opinion of what was said was rationally based on his perception" and that "that's really very much the case here."
¶ 20 Because the trial court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach, see Rogers , 196 Wis. 2d at 829, we conclude that the trial court did not erroneously exercise its discretion when it admitted the detective's lay opinion testimony concerning the movement of the shooter on the videotape. We therefore affirm the judgment.
By the Court. -Judgment affirmed.
Not recommended for publication in the official reports.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

Tucker made several arguments, not addressed here, premised on his factually inaccurate representation of the testimony. We address only the dispositive issue of whether the testimony was admissible under Wis. Stat. § 907.01. See Sweet v. Berge , 113 Wis. 2d 61, 67, 334 N.W.2d 559 (Ct. App. 1983) (this court need not address issues other than the one that is dispositive of the appeal).