COURT OF APPEALS
DECISION
DATED AND FILED

March 30, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1693-CR**

Cir. Ct. No. **2017CF4**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

MARCELLA MAE LAPOINTE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Bayfield County: JOHN P. ANDERSON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Marcella LaPointe appeals a judgment, entered upon a jury's verdict, convicting her of robbery with use of force and of

substantial battery with the intent to cause bodily harm, both counts as a party to a crime.[1] LaPointe also appeals an order denying her postconviction motion for a new trial. LaPointe argues that her trial counsel was ineffective by failing to impeach the victim with her prior convictions. LaPointe also contends the circuit court erred by admitting testimony without proper foundation. We reject these arguments and affirm the judgment and the order.

## BACKGROUND

¶2      The State charged LaPointe and her sister Angelyne with robbery by use of force, substantial battery, mistreating an animal, and misdemeanor theft, all as a party to a crime. The State also charged LaPointe with misdemeanor bail jumping. The charges arose from allegations that LaPointe and Angelyne attacked Claire[2] during an "after bar party" at Claire's Washburn home, stole Claire's phone, and kicked her dog.

¶3      The sisters' cases were joined for trial, and an initial trial ended in a mistrial without prejudice. Before the second trial, the parties agreed that Claire had two prior convictions. Claire testified that she met the sisters for the first time at a Washburn area bar and invited them to her home after the bar closed. While at her home, Claire shared alcohol and marijuana with the sisters, and she visited "cordially" with them for "[a] couple hours." Claire recounted that she went to use the bathroom, and when she returned, LaPointe tapped Angelyne on the

---

[1] La Pointe was also convicted, upon her no-contest plea, of misdemeanor bail jumping. LaPointe, however, raises no issues on appeal that are specific to that conviction.

[2] In compliance with the policy underlying WIS. STAT. RULE 809.86(4) (2019-20), we refer to the victim by a pseudonym. All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

shoulder and asked, "[S]hould we do it[?]" Claire noticed that her marijuana was gone and that her bottle of brandy fell from LaPointe's vest onto the floor. As the sisters approached her, Claire "fell to the floor on [her] knees" and started to feel punches and kicks to the back of her head.

¶4    Claire then took refuge under the kitchen table, intermittently throwing at them whatever items she could reach from under the table. Claire testified that when her dog attempted to approach her, the sisters kicked the dog, causing him to yelp. When Claire threatened to call the police, one of the sisters grabbed the phone from her hand. Claire testified that the sisters left with her phone, and Claire then ran to a neighbor's home to call police.

¶5    Both the neighbor and the responding officer testified about their interactions with Claire. The neighbor testified that Claire's face was "red, swollen," she had a cut on her lip, and she appeared emotionally shaken and traumatized while telling her that two women beat her up. The responding officer testified that Claire was crying and upset and told him that two sisters whom she did not know by name attacked her. Claire was transported to the hospital, and a treating physician testified that Claire suffered abrasions to her face, swelling around her eye, and a fractured eye socket.

¶6    Through his investigation, the police officer identified LaPointe and Angelyne as two possible suspects, and Claire identified them from a photograph of several people found on a social media website. After returning home from the hospital, Claire's boyfriend found a wallet containing LaPointe's picture in Claire's kitchen. When questioned by police, LaPointe admitted she was at a house in Washburn on the night in question.

¶7 Claire further testified that she reported her phone stolen and had purchased a new iPhone.[3] Over LaPointe's pretrial challenge, Claire testified that when she activated the new phone, her iCloud account updated and photographs of children and a house she did not recognize "started flooding [her] device." Claire emailed the photographs to police, who located the house and determined that LaPointe lived there.

¶8 In turn, LaPointe testified that she and her sister smoked marijuana and drank alcohol with Claire. LaPointe added that she and Claire danced, flirted, and kissed, and Claire asked her to sleep over. LaPointe claimed that Claire became upset when LaPointe tried to leave and Claire took LaPointe's wallet, refusing to return it to her. LaPointe testified that she hit Claire in self-defense because Claire was grabbing and hitting her and she would not return LaPointe's wallet. LaPointe denied taking Claire's cell phone or kicking the dog.

¶9 LaPointe pleaded no contest to bail jumping before the jury returned its verdicts on the other charges. The jury acquitted LaPointe and Angelyne of mistreating the dog, but it found LaPointe guilty of the remaining offenses. The theft charge was later dismissed as a lesser-included offense of the robbery offense. The circuit court imposed and stayed concurrent imprisonment terms and placed LaPointe on probation. With respect to the bail jumping conviction, the court sentenced LaPointe to a concurrent thirty-day jail term. LaPointe's

---

[3] Two weeks after the incident, Claire's phone was turned in to the police department and returned to her.

4

postconviction motion for a new trial was denied after a *Machner*[4] hearing, and this appeal follows.

## DISCUSSION

¶10    LaPointe argues that her trial counsel was ineffective by failing to impeach Claire with her two prior convictions.  This court's review of an ineffective assistance of counsel claim is a mixed question of fact and law.  *State v. Erickson*, 227 Wis. 2d 758, 768, 596 N.W.2d 749 (1999).  The circuit court's findings of fact will not be disturbed unless they are clearly erroneous.  *Id.*  However, the ultimate determination of whether the attorney's performance falls below the constitutional minimum is a question of law that this court reviews independently.  *Id.*

¶11    To substantiate a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's errors were prejudicial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A court need not address both components of this inquiry if the defendant does not make a sufficient showing on one.  *See id.* at 697.

¶12    To establish deficient performance, a defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  A defendant proves prejudice by demonstrating there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine

---

4 *See **State v. Machner**, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

confidence in the outcome." *Id.* at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. However, "a defendant need not prove the outcome would 'more likely than not' be different in order to establish prejudice in ineffective assistance cases." *State v. Sholar*, 2018 WI 53, ¶44, 381 Wis. 2d 560, 912 N.W.2d 89 (citing *Strickland*, 466 U.S. at 693). Thus, "a defendant need not prove the jury *would have* acquitted him [or her], but he [or she] must prove there is a *reasonable probability* it would have, absent the error." *Id.*, ¶46.

¶13    The State acknowledges that evidence of Claire's prior convictions was admissible for impeachment purposes under WIS. STAT. § 906.09(1). Generally, however, the failure to impeach a witness with prior convictions will not be deemed prejudicial where the jury was presented with other evidence that: (1) gives it reason to question the witness's credibility, and (2) supports the defendant's guilt. *See State v. Trawitzki*, 2001 WI 77, ¶¶43-45, 244 Wis. 2d 523, 628 N.W.2d 801, *holding modified on other grounds by State v. Davison*, 2003 WI 89, ¶44, 263 Wis. 2d 145, 666 N.W.2d 1. Apart from a witness's prior conviction, a witness may be impeached through prior inconsistent statements; bias; character; a defect in a witness's capacity to observe, recall, and recant what happened; or testimony from other witnesses about material facts that differs from the challenged witness's testimony. *Rogers v. State*, 93 Wis. 2d 682, 689-90, 287 N.W.2d 774 (1980).

¶14    Even if we assume that counsel's failure to impeach Claire with prior convictions was deficient performance, LaPointe fails to establish that this deficiency was prejudicial. Claire's credibility was already at issue, as the jury heard testimony from the neighbor and the responding officer that Claire smelled of alcohol when she reported the attack. Further, the physician who treated Claire

at the hospital testified that her level of intoxication impeded his ability to perform an "in-depth assessment" of her injuries.

¶15 The jury also heard that Claire presented inconsistent accounts about multiple issues, including whether she drove or walked home from the bar; whether her phone was taken by the sisters or lost in the house; what she threw at the sisters in an attempt to get them to leave her house; and whether the struggle described by Claire could have occurred based on the condition of the kitchen observed by the responding officer. Defense counsel also challenged Claire's credibility based on her inability to differentiate between the actions of the two sisters—Claire did not know which sister grabbed her phone, nor did she know how her dog was struck or who struck him. Finally, LaPointe identified a motive for Claire's allegations, asserting Claire was upset when LaPointe denied her invitation to spend the night. Claire was thoroughly impeached on multiple fronts; evidence of her prior convictions would have, at best, added only marginally to defense counsel's other impeachment efforts.

¶16 Additionally, other evidence supported the jury's verdicts for robbery and substantial battery. Although LaPointe disputed Claire's assertions about what happened, LaPointe admitted that she was at Claire's residence and that she swung at Claire three times, likely hitting her in the face. In light of the evidence at trial, LaPointe has not demonstrated a reasonable probability the jury would have acquitted her of the remaining crimes had trial counsel impeached Claire's credibility with prior convictions.

¶17 To the extent LaPointe nevertheless intimates that the holding in *State v. Smith*, 203 Wis. 2d 288, 553 N.W.2d 824 (Ct. App. 1996), necessitates reversal of her conviction, LaPointe's reliance on *Smith* is misplaced. As the

State properly notes, *Smith* is distinguishable on its facts. In that case, this court reversed a conviction based on the circuit court's erroneous decision to prevent Smith from impeaching a witness with prior convictions. *Id.* at 296-99. Thus, the State had the burden of showing that the circuit court's error in excluding the evidence was harmless. *Id.* at 300. Here, LaPointe has the burden of showing that her counsel's failure to impeach Claire with prior convictions prejudiced her. As discussed above, LaPointe has failed to satisfy her burden.

¶18 LaPointe also argues that the circuit court erred by permitting the admission of photographs from Claire's new phone, as well as testimony at trial about those photographs. The admissibility of evidence lies within the circuit court's sound discretion. *State v. Pepin*, 110 Wis. 2d 431, 435, 328 N.W.2d 898 (Ct. App. 1982). We will uphold an evidentiary ruling if we conclude the circuit court "examined the relevant facts, applied a proper standard of law, used a demonstrated rational process, and reached a conclusion that a reasonable judge could reach." *State v. Walters*, 2004 WI 18, ¶14, 269 Wis. 2d 142, 675 N.W.2d 778.

¶19 LaPointe asserts that the functioning of cloud storage systems for data on mobile phones is not something so well known that it can be assumed the jury was aware of its uses and limitations. Thus, according to LaPointe, this evidence should have been excluded on foundational grounds. One way to lay a foundation, however, "is through the 'testimony of a witness with knowledge that a matter is what it is claimed to be.'" *State v. Giacomantonio*, 2016 WI App 62, ¶20, 371 Wis. 2d 452, 885 N.W.2d 394 (citation omitted). Alternatively, WIS. STAT. § 909.015(4) permits evidence to be authenticated through its "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." *Giacomantonio*, 371

8

Wis. 2d 452, ¶20.  A party may authenticate evidence through circumstantial evidence.  *Id.*, ¶21.  "The requirements of authentication or identification as a condition precedent to admissibility are satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  WIS. STAT. § 909.01.

¶20    Claire's testimony about unfamiliar photographs downloading to her new cell phone from her iCloud account constitutes circumstantial evidence to show that either LaPointe or Angelyne took the phone.  Likewise, police testimony identifying a house in the photographs as LaPointe's residence is circumstantial evidence that one of the sisters took the phone, and it also rebuts the defense's claim that there was "no actual evidence" that either LaPointe or Angelyne possessed the phone.  The photographs and testimony were also relevant to counter defense counsel's argument that the cell phone was not stolen but, rather, lost.

¶21    We are not persuaded that expert testimony was a prerequisite to authentication of the cell phone photographs in this case.  Claire could reasonably testify that she had an iCloud account and that a newly activated cell phone was populated with photographs that had been taken with her old cell phone and uploaded to the cloud.  The circuit court properly determined that this testimony was admissible based on Claire's "knowledge of her own phone, her own photographs, and her own iCloud account."

¶22    The circuit court also reasonably determined that in "today's day and age," people understand that if they take photographs with a cell phone, and they have an account where such photographs are stored electronically, those photographs go to that account.  This explanation implicitly recognizes that jurors

can "use their own life experiences in assessing" the accuracy of a lay person's testimony. *See* ***State v. Small***, 2013 WI App 117, ¶15, 351 Wis. 2d 46, 839 N.W.2d 160. Further, any gaps in Claire's testimony about the iCloud storage process, any challenge to LaPointe's connection to the house in the photographs, and any question as to whether LaPointe would have had time to take the photographs before her arrest go to the weight of the evidence, not to its admissibility. *See, e.g.*, ***State v. McCoy***, 2007 WI App 15, ¶9, 298 Wis. 2d 523, 728 N.W.2d 54 (2006).[5]

    *By the Court*.—Judgment and order affirmed.

    This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[5] Because we conclude that the circuit court properly admitted the challenged evidence, we need not address the State's alternative argument that any error was harmless. *See* ***Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (appellate courts need not address every issue raised by the parties when one is dispositive).